[No. S005834. Feb. 21, 1989.]

KENNETH W. KIZER, as Director, etc., Plaintiff and Respondent,
v.
JACK E. HANNA, as Executor, etc., Defendant and Appellant.

COUNSEL

Thomas Trent Lewis and Rehwald, Rameson & Lewis for Defendant and Appellant.

William A. Quinlan and Quinlan, Kershaw, Fanucchi & Hoffman as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, and Anne S. Pressman, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

PANELLI, J.—Jack E. Hanna, as executor of the estate of Zyoud Jacob, appeals a summary judgment in favor of Kenneth W. Kizer, M.D., Director of the Department of Health Services, State of California (hereinafter Department). At issue is whether Welfare and Institutions Code section 14009.5 allows the Department to be reimbursed from a Medi-Cal recipient's estate for Medi-Cal benefits paid prior to the effective date of section 14009.5, when the recipient died after this date. We conclude that it does.

## I. FACTS

The facts are not in dispute. Zyoud Jacob died on June 26, 1983. From November 1, 1974, until the time of her death, Jacob received a total of

$60,372.90 in benefits from Medi-Cal.[1] After Jacob's death, the Department filed a preferred creditor's claim against her estate, seeking reimbursement for all Medi-Cal benefits paid to Jacob. The Department acted pursuant to Welfare and Institutions Code section 14009.5, which authorizes the state to claim against the estate of a deceased Medi-Cal recipient "an amount equal to payments for health care services received."[2] Section 14009.5 was enacted as an urgency measure and became effective on June 28, 1981, almost two years prior to Jacob's death.

Hanna, the executor of Jacob's estate, accepted the Department's claim to the extent that it sought reimbursement for benefits paid to Jacob after the June 28, 1981, effective date of section 14009.5. He rejected that part of the claim that sought reimbursement for Medi-Cal benefits paid prior to June 28, 1981. Hanna tendered to the Department only $15,658.93, an amount equal to the Medi-Cal benefits paid from June 28, 1981, until Jacob's death.[3] The Department rejected this tender, asserting that all of the Medi-Cal benefits paid to Jacob were subject to the mandate of section 14009.5 because she died after the statute's effective date. The Department filed suit seeking reimbursement for the full amount of benefits paid.

On December 3, 1986, the trial court granted the Department's motion for summary judgment and entered judgment against Hanna for $60,372.90, representing the full amount of benefits received by Jacob. The Court of Appeal affirmed, holding that the application of section 14009.5 to

---

[1] Medi-Cal is a program in which the state is partially reimbursed by the federal government for providing needy individuals with access to medical treatment. (42 U.S.C. § 1396 et seq.; Welf. & Inst. Code, § 14000 et seq.)

[2] Welfare and Institutions Code section 14009.5 reads: "Notwithstanding any other provision of this chapter, when a decedent has received health care services under this chapter or Chapter 8 (commencing with Section 14200) the department may claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received. The department may not claim where the eligible person was under 65 when services were received, or where there is a surviving spouse, or where there is a surviving child who is under age 21 or who is blind or permanently and totally disabled, within the meaning of the Social Security Act. [¶] The department may waive its claim, in whole or in part, if it determines that enforcement of the claim would result in substantial hardship to other dependents of the individual against whose estate the claim exists."

The exceptions to section 14009.5 are inapplicable in this case since Jacob was over the age of 65 when she received all the Medi-Cal benefits and is not survived by a spouse or a blind, disabled, or minor child.

All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] As this case illustrates, the estate of a Medi-Cal recipient can often be relatively substantial even though only individuals with financial need qualify for the benefits. This is because certain assets, including a primary residence, are exempted from the Medi-Cal eligibility determination. (§§ 14005.4, 14005.7, 14005.12, 14006; Cal. Code Regs., tit. 22, §§ 50423-50489.)

benefits received before the statute's effective date is proper when the recipient died after this date, because no vested rights are impaired. We granted review in order to resolve a conflict in the Courts of Appeal.

The issue presented here was addressed in *Department of Health Services* v. *Fontes* (1985) 169 Cal.App.3d 301 [215 Cal.Rptr. 14] and *Estate of Messner* (1987) 190 Cal.App.3d 818 [235 Cal.Rptr. 495]. Both cases agreed that section 14009.5 applies prospectively, but they disagreed as to what that means. (*Fontes,* 169 Cal.App.3d at p. 304; *Messner,* 190 Cal.App.3d at pp. 821-822.) *Fontes* held that section 14009.5 authorizes the Department to claim reimbursement for Medi-Cal benefits received before the statute's effective date when the recipient died after this date. *Messner,* on the other hand, concluded that the Department was entitled to claim reimbursement only for benefits paid after the effective date of section 14009.5. The Department urges us to follow *Fontes* while Hanna urges us to follow *Messner*.

In *Fontes* the court concluded that "[t]he application of this statute to estates which arose after its effective date did not affect any existing rights and accordingly, had no impermissibly retroactive effect, even where the benefits had been received prior to the effective date." (*Fontes, supra,* 169 Cal.App.3d at p. 305.) According to *Fontes,* the effect of section 14009.5 on the testamentary distribution of a Medi-Cal recipient's estate is proper because such distribution is a creature of statute and is controlled by the law in effect at the date of death. (*Ibid.*) The court further reasoned that the statute does not affect any existing rights held by the recipient's estate since the estate did not come into existence until the Medi-Cal recipient died. (*Ibid.*)

*Messner* asserted that application of section 14009.5 to Medi-Cal benefits received prior to the statute's effective date created an "after-the-fact" debt and prevented the recipient from controlling the testamentary disposition of his property. (*Messner, supra,* 190 Cal.App.3d at p. 823.) This, the court reasoned, constituted a taking of property without notice. The court also implied that the Department's right to reimbursement arose not at the time of death but rather at the time the Medi-Cal benefits were paid. (*Id.* at p. 824.) Consequently, the court concluded that the application of section 14009.5 to benefits received prior to the statute's effective date impermissibly affected earlier acts and transactions. (*Id.* at p. 822.)

Having the benefit of the *Messner* and *Fontes* decisions, the Court of Appeal in this case decided to follow *Fontes*. The court agreed with *Fontes* that a Medi-Cal recipient has no vested right to control the testamentary disposition of his property because such disposition rests entirely upon legislative will. Likewise, it stated that section 14009.5 does not impair the

vested rights of the deceased recipient's estate or those who take from the estate, because these rights come into existence after the recipient's death. The court added that section 14009.5 did not change the previous law which made Medi-Cal recipients immune from repayment of benefits lawfully obtained. This conclusion was based on the fact that the statute only allowed a claim against the recipient's estate and did not affect or impair the recipient's right to dispose of the property during his lifetime free of any reimbursement claim. Thus, just as in *Fontes,* the Court of Appeal concluded that allowing reimbursement for benefits paid prior to the enactment of section 14009.5 has no retroactive effect because such application does not affect any existing rights.

## II. Discussion

Preliminarily, we note that section 14009.5 carefully balances the state's interests against those of the Medi-Cal recipient's heirs. The Medi-Cal program ensures that needy persons have access to basic medical care without requiring them to sell their homes and without impairing their ability to own certain property. (See *ante,* fn. 3.) However, in the face of rising medical costs, the program has placed an increasing financial burden on the state. The reimbursement requirements of section 14009.5 provide an equitable and reasonable method of easing the state's financial burden while ensuring the continued viability of the Medi-Cal program. In short, section 14009.5 enables Medi-Cal to help those persons in need when they have such need, yet ensures that when the need no longer exists by virtue of the recipient's death, the benefits paid can be recouped. The Medi-Cal benefits thus recouped can be used to assist others in need.

At the same time, section 14009.5 prevents the heirs of Medi-Cal recipients from unfairly benefitting from the program. This is so because, but for Medi-Cal, a recipient would probably have to sell his home in order to obtain the funds with which to pay for medical care. As a result of not having to sell his home, the estate of a deceased Medi-Cal recipient is greater than it might otherwise be. The reimbursement requirements of section 14009.5 thus seek from the *estate* only that which would not have existed but for the Medi-Cal program. Furthermore, as a result of Medi-Cal, the heirs are not required to bear the full burden of the recipient's medical care during the recipient's lifetime.

In drafting the statute the state recognized that allowing reimbursement from a Medi-Cal recipient's estate may be unfair in certain circumstances. Consequently, section 14009.5 prohibits claims for reimbursement where the recipient is survived by a spouse or by a blind, disabled or minor child. It also prohibits claims where the recipient was under 65 when the benefits

were received. Moreover, the statute specifically authorizes the Department to waive its claim when substantial hardship to dependents of the deceased Medi-Cal recipient would result. Section 14009.5 thus strikes an equitable balance between the competing interests, measured, in part, by conditions existing on the date of the recipient's death.

With these considerations in mind, we turn to the issue before us.

■ Hanna argues the Court of Appeal applied section 14009.5 retroactively even though there is no legislative intent regarding such application. Citing *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585], which in turn relied on *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159], he contends this was error because a statute is not applied retroactively unless there is evidence the Legislature intended it be so applied. We have no quarrel with *Evangelatos* or *Aetna*.[4] Rather, Hanna's argument misses the point, for this case does not present a true question of retroactivity. It is undisputed that section 14009.5 affects only estates arising after the statute's effective date and that there is no legislative intent to the contrary. Because the statute affects only these estates, its application is prospective, not retroactive. Only if the statute had been applied to estates that arose *before* the effective date of the statute could we agree with Hanna's argument. Thus, given that section 14009.5 applies prospectively only, the issue is whether its application to benefits received before the statute's effective date somehow has an impermissibly retroactive *effect*.

■ A statute is retroactive if it substantially changes the legal effect of past events. (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 153 [233 Cal.Rptr. 308, 729 P.2d 743]; *Aetna Cas. & Surety Co., supra,* 30 Cal.2d at p. 391.) A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. (*Burks* v. *Poppy Construction Co.*

___

[4] Importantly, both *Evangelatos* and *Aetna,* unlike the case before us, discussed the issue of retroactivity in relation to tort concepts. *Evangelatos* dealt with the retroactivity of Proposition 51, a tort reform statute. We indicated that it was well established that the application of a tort reform statute to "a cause of action which arose prior to the effective date of the statute but which is tried after the statute's effective date would constitute a retroactive application of the statute. [Citations omitted.]" (*Evangelatos, supra,* 44 Cal.3d at p. 1206.) *Aetna* dealt with a personal injury situation, albeit in the context of a worker's compensation action. In *Aetna* we concluded that, absent any legislative intent to the contrary, application of a statute enacted subsequent to the injury would be an impermissible retroactive application of that statute because the right of action accrued upon the date of injury. Thus, the law in force at the time of injury is the applicable law. (*Aetna, supra,* 30 Cal.2d at pp. 392-394.) *Evangelatos* and *Aetna* are distinctly different from the case before us, where we are concerned not with the law in effect when a cause of action arises but rather with the law governing testamentary disposition.

(1962) 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313]; *United States* v. *Jacobs* (1939) 306 U.S. 363, 367 [83 L.Ed. 763, 767, 59 S.Ct. 551].) ▉ Because section 14009.5 does not substantially change the legal effect of past transactions, even when applied to benefits received prior to its effective date, the statute does not have a retroactive effect.

Our analysis must begin with the language of section 14009.5. ▉ If a statute's language is clear, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) ▉ Section 14009.5 states that the Department has a claim against "the *estate of the decedent,* or against any recipient of the property of that decedent by distribution or survival . . . ." (Italics added.) It further provides that the Department may not claim reimbursement "where the eligible person was under 65 when services were received, or where there is a surviving spouse, or where there is a surviving child who is under age 21 or who is blind or permanently and totally disabled . . . ." The plain language of the statute dictates that the Department's right to reimbursement is against the recipient's *estate.* Consequently, the Department's right to reimbursement arises, if at all, at the time of the recipient's death and is dependent on conditions existing at such time.

Equally clear from the language of section 14009.5 is the fact that no liability to reimburse the Department arises until the Medi-Cal recipient's death. Prior to the enactment of section 14009.5, a welfare recipient was under no obligation to reimburse the state for public benefits legitimately obtained. (*County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 33 [148 Cal.Rptr. 584, 583 P.2d 109].) The enactment of section 14009.5 in no way alters the recipient's "immunity," for the statute's language does not give the Department the right to make any claim against the recipient while that recipient is alive. Indeed, section 14015, enacted in 1965, specifically states that the receipt of Medi-Cal benefits "shall not impose any limitation or restriction upon the person's right to sell, exchange or change the form of property holdings nor shall the care provided constitute any encumbrance on the holdings."[5]

The retroactivity issue presented in this case is very similar to the one raised in *Burks* v. *Poppy Construction Co., supra,* 57 Cal.2d 463. In *Burks* the plaintiffs alleged that defendant violated the Hawkins Act, which was enacted to prevent discrimination in connection with the rental or sale of publicly assisted housing. The Hawkins Act was enacted after defendant's

---

[5] The transfer or sale of a recipient's property may, however, affect Medi-Cal eligibility. (See § 14015.)

housing development had received public assistance. Despite this fact, we stated that application of the Hawkins Act to defendant was not retroactive because sanctions were imposed only for violations occurring after the statute's effective date. (*Id.* at p. 474.) Of course, had defendant's housing project never received public assistance, it would not have been subject to the requirements of the Hawkins Act. Nevertheless, we concluded that "[a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. [Citations omitted.]" (*Ibid.*)

Just as with the Hawkins Act in *Burks,* the application of section 14009.5 depends upon the existence of "facts or conditions" (i.e., the receipt of Medi-Cal benefits after age 65) that came into existence prior to the statute's enactment. However, the clear language of section 14009.5 states that the statute applies only to estates arising after its effective date, and then only if certain conditions do not exist. Thus, for the same reasons we concluded in *Burks* that the Hawkins Act was not retroactively applied, we conclude that section 14009.5 has no retroactive effect on Medi-Cal benefits received prior to the statute's effective date.

Hanna also suggests that section 14009.5 is retroactive because it interferes with the interests of the estate or of the Medi-Cal recipient's heirs. However, these interests do not even come into existence until the recipient's death. (Prob. Code, § 300.) Even then the property is explicitly subject to administration by the recipient's executor. (*Ibid.*) In sum, the application of section 14009.5 to estates arising after the statute's effective date does not substantially change the legal effect of any past transactions.

██ ██ Further support for the conclusion that section 14009.5 has no retroactive effect as applied here is the fact that the disposition of estate property is controlled by the law in effect on the date the owner of the property dies. (*Estate of Phillips* (1928) 203 Cal. 106, 109-110 [263 P. 1017]; *Estate of Benvenuto* (1920) 183 Cal. 382, 386 [191 P. 678]; *Estate of Dillehunt* (1959) 175 Cal.App.2d 464, 468 [346 P.2d 245].) While we have stated this rule regarding the disposition of estate property most often in the context of a person's entitlement to inherit property, it applies with equal force to determining what burdens, limitations and conditions are imposed upon the estate property. For example, in *United States* v. *Jacobs, supra,* 306 U.S. 363, the court held that a statute imposing an estate tax on the transfer of property to a surviving joint tenant, such tax being assessed against the full value of the property, was not retroactive as applied to a previously created joint tenancy where the decedent died after the enactment of the statute. Similarly, section 14009.5 has no retroactive effect and

simply affects how the property of a Medi-Cal recipient's estate is distributed.

Nevertheless, Hanna argues that application of section 14009.5 to benefits received prior to the statute's effective date is retroactive because it prevents a Medi-Cal recipient from controlling the testamentary disposition of his property. While this may be true, interfering with a person's expectations of testamentary disposition is not sufficient to make section 14009.5 retroactive. ■ The testamentary disposition of property is completely subject to legislative control. (*Estate of Burnison* (1949) 33 Cal.2d 638, 640 [204 P.2d 330]; *Estate of Watkinson* (1923) 191 Cal. 591, 595 [217 P. 1073].) The Legislature may "withhold the right altogether, or *impose any conditions or limitations upon it which it chooses.*" (Italics added.) (*Estate of Burnison, supra,* 33 Cal.2d at pp. 639-640.) Indeed, in *Estate of Watkinson, supra,* we upheld an inheritance tax statute based upon these principles. In doing so we stated that "the tax is imposed and sustainable upon the theory that the state which confers the privilege of succeeding to property may attach thereto the condition that a portion of the property shall be contributed to that state. [Citations omitted.]" (191 Cal. at p. 596.) In none of these cases did we conclude that statutes limiting a person's testamentary disposition of property were retroactive because the limitations were inconsistent with the testator's expectations.

■ Hanna also argues that section 14009.5, as applied here, is retroactive because it creates an "after-the-fact" debt or liability. If the application of section 14009.5 creates an "after-the-fact" debt or liability, then it alters a Medi-Cal recipient's interest in not having to repay such benefits. However, section 14009.5 does not create an "after-the-fact" debt or liability.

■ The word "debt" has no fixed meaning and must be construed within the context in which it is used. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 326 [182 Cal.Rptr. 506, 644 P.2d 192].) At one end of the spectrum, a "debt" is a sum of money which is "certainly and in all events payable" without regard to whether it is payable now or at a future time. (*UMF Systems, Inc.* v. *Eltra Corp.* (1976) 17 Cal.3d 753, 756 [132 Cal.Rptr. 129, 553 P.2d 225] [citing *People* v. *Arguello* (1869) 37 Cal. 524, 525].) Under this definition, a sum payable upon some contingency is not a debt until the contingency occurs. (*Ibid.*)

In *UMF Systems Inc., supra,* we defined "debt" broadly so as to include contingent obligations. In that case we defined "debt" for the purposes of a statute authorizing the judgment creditor of a corporation to sue when an unlawful distribution of corporate funds occurred. (Former Corp. Code, § 826.) The statute provided for such an action only where the judgment

creditor's "debt or claim" arose prior to the unlawful distribution of corporate funds. We held that "debt," as used in that statute, included the corporation's obligation to pay future rent under a lease even though such obligation was contingent. We reasoned that a broad definition was appropriate because the purpose of the statute was to protect creditors. (17 Cal.3d at pp. 757-758.) Moreover, we emphasized that we were determining only whether contingent creditors had standing to sue under the statute. (*Id.* at p. 759.) We indicated that if something more than standing to sue were involved, the narrower definition of "debt" may have been appropriate. (*Ibid.*) Since no similar considerations justifying a broad definition of "debt" exist in the case before us, we conclude that the narrower definition should be used here.

Under this limited definition of "debt" as a sum " 'certainly and in all events payable' " (*UMF Systems, Inc.* v. *Eltra Corp., supra,* 17 Cal.3d at p. 756), the payment of Medi-Cal benefits does not create a debt under section 14009.5, because the Department's right to seek reimbursement arises only after the recipient's death and even then is contingent upon conditions in existence at that time. Thus, if the recipient leaves a surviving spouse, a minor or disabled child, or an insufficient estate, there is no right to reimbursement. Further, as indicated, the statute has no effect on the Medi-Cal recipient's right to dispose of his property during his lifetime. (§ 14015.) Consequently, because no debt arises upon the payment of Medi-Cal benefits, section 14009.5 does not affect the recipient's "immunity" from repaying Medi-Cal benefits.

However, the dissent asserts that Probate Code section 9000, subdivision (a)(1), establishes that a Medi-Cal recipient's liability to repay benefits arises upon payment of the benefits. The dissent observes that section 14009.5 authorizes the Department to file a "claim," which the Probate Code defines in part as "a demand for payment for any of the following, whether due, not due, or contingent, and whether liquidated or unliquidated: [¶] (1) *Liability of the decedent,* whether arising in contract, tort, or otherwise." (Italics added.)[6] (Dis. opn. by Kaufman, J., pp. 16-17.) The dissent reasons that because "[a]ny liability of a decedent necessarily must have existed during the decedent's lifetime, while he or she was still a

---

[6] Probate Code section 9000 states in full: "As used in this division: [¶] (a) 'Claim' means a demand for payment for any of the following, whether due, not due, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether arising in contract, tort, or otherwise. [¶] (2) Liability for taxes incurred before the decedent's death, whether assessed before or after the decedent's death, other than property taxes and assessments secured by real property liens. [¶] (3) Liability of the estate for funeral expenses of the decedent. [¶] (b) 'Claim' does not include a dispute regarding title of a decedent to specific property alleged to be included in the decedent's estate."

person" (*id.* at p. 17), the application of section 14009.5 to benefits received before its effective date would have a retroactive effect as to the decedent.

The dissent, in our view, reads too much into the Probate Code's definition of "claim," a general definition presumably promulgated without concern for the specific provisions of section 14009.5. ■ It is a principle of statutory construction that "[t]he words of [a] statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) In light of the plain purpose of section 14009.5 to recoup Medi-Cal payments not from the recipient but from the recipient's estate, we decline to read the subsequently enacted Probate Code definition of "claim" as converting a potential liability of the estate into a liability of the recipient.

■ Moreover, the Law Revision Commission comment accompanying Probate Code section 9000 states that "claim" is defined *"broadly to include all claims against the decedent whether in contract, tort or otherwise . . . ."* (Italics added.) (Cal. Law Revision Com. com., West's Ann. Prob. Code, § 9000 (1989 Supp.) p. 368, italics added.) The commission comment thus reflects the Legislature's intent that the definition of "claim" be broadly, rather than restrictively, interpreted. Moreover, Probate Code section 9000 is drawn from section 1-201(4) of the Uniform Probate Code. (Cal. Law Revision Com. com., *supra,* p. 368.) Uniform Probate Code section 1-201 states that a "claim" includes *"liabilities of the estate which arise at or after the death of the decedent* or after the appointment of a conservator, including funeral expenses and expenses of administration."[7] (Italics added.) (8 West's U. Laws Ann. (1983) U. Prob. Code, § 1-201(4).) Consequently, notwithstanding the literal language of Probate Code section 9000, a reasonable interpretation of "claim" would include liabilities arising after, as well as before, a decedent's death.

### III. DISPOSITION

■ For the above reasons, we conclude that the Department can claim reimbursement from a Medi-Cal recipient's estate for benefits paid prior to

---

[7]Uniform Probate Code section 1-201(4) states in full: "[¶] (4) 'Claims,' in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, or demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate."

the effective date of section 14009.5, when the recipient died after this date. Thus, we affirm the judgment of the Court of Appeal requiring Hanna, as the executor of Jacob's estate, to reimburse the Department in the amount of $60,372.90.

Lucas, C. J., Arguelles, J., and Eagleson, J., concurred.

KAUFMAN, J.—I respectfully dissent. In my view, the Court of Appeal in *Estate of Messner* (1987) 190 Cal.App.3d 818 [235 Cal.Rptr. 495], correctly held that in enacting Welfare and Institutions Code section 14009.5 (section 14009.5), the Legislature did not intend to subject decedents' estates to claims by the Department of Health Services (department) for reimbursement of amounts paid before June 28, 1981, the section's effective date, for health care services rendered to the decedent.

"It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159]; accord, *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585]; *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 153 [233 Cal.Rptr. 308, 729 P.2d 743].) The department attempts to infer such intent from the fact that section 14009.5 was included in an urgency measure (Cal. Const., art. IV, § 8, subd. (d)). As *Messner* explains: "Section 14009.5 was enacted as part of a chapter amending, adding, and repealing over 160 statutes in 10 different codes. [Stats. 1981, ch. 102, pp. 699-769.] Many of these statutes were in the Welfare and Institutions Code and were directed to developing pilot programs to save money, i.e., prospective savings. In this light any force to a retroactive argument based on the urgency of the legislation becomes ethereal. Moreover, we cannot overlook the Legislature's silence on this issue. Had the Legislature wanted section 14009.5 to be applied retroactively, it could have easily so stated. (See *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 500-501 [209 Cal.Rptr. 771].)" (190 Cal.App.3d at p. 821.) Further, in *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d 1188, the majority of this court rejected a virtually identical argument—that intent to make an initiative statute retroactive should be inferred from the statute's declarations of urgency. (*Id.* at pp. 1209-1212; cf. *id.* at pp. 1231-1233 [dis. opn. of Kaufman, J.].)

The majority opinion argues, however, that the fact that section 14009.5 affects only "estates arising" (i.e., decedents dying) after the section's effective date makes "its application . . . prospective, not retroactive," and that therefore "the issue is whether [section 14009.5's] application to benefits received before the statute's effective date somehow has an imper-

missible retroactive *effect*." (*Ante,* p. 7.) But this is a distinction without a difference, for the very essence of statutory retroactivity is the making of substantial changes in the legal *effects* of past events. (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, 153; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388, 394; see also *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d 1188, 1206.)[1]

As the majority observes, "[a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. (*Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313]; *United States* v. *Jacobs* (1939) 306 U.S. 363, 367 [83 L.Ed. 763, 767, 59 S.Ct. 551])." (*Ante,* pp. 7-8.) Rather, to be retroactive, a statute "must give the previous transaction to which it relates some different legal effect from that which it had under the law when it occurred" (*Holt* v. *Morgan* (1954) 128 Cal.App.2d 113, 117 [274 P.2d 915]). The nature of the change in legal effect which a statute must give a preexisting transaction if it is to be deemed retroactive is illustrated by the foregoing three cases, *Burks, Jacobs,* and *Holt,* where the statutes in question depended for their application on a preexisting transaction but were deemed nonretroactive because they did not give the transaction in question a different legal effect. *Burks, supra,* 57 Cal.2d 463, 474, held that a statute prohibiting discrimination in publicly assisted housing was not made retroactive by the mere fact that the public assistance had been received prior to enactment; the statute did not change the legal effect of the public assistance. *Jacobs, supra,* 306 U.S. 363, 366 [83 L.Ed. at pp. 766-767], held a statute imposing an estate tax on transfers to a surviving joint tenant was not retroactive as applied to previously created joint tenancies, the legal effect of which was not changed by the tax. *Holt, supra,* 128 Cal.App.2d 113, 117, held a statute which prohibited the pledge of a liquor license as security for a debt was not retroactive as applied to an attempted pledge of a liquor license after the statute's effective date as security for a debt created before that date. "Prior to the enactment of the [statute] plaintiff was nothing but an unsecured creditor, without any right contractual or otherwise to demand security. The enactment of [the statute] did not cause any change in the position of an unsecured creditor. There could only be retroactive application where prior to the enactment the

---

[1] The majority opinion asserts: "*Evangelatos* and *Aetna* are distinctly different from the case before us, where we are concerned not with the case law in effect when a cause of action arises but rather with the law governing testamentary disposition." (*Ante,* p. 7, fn. 4.) To the contrary, we are concerned here with the law in effect at the time of a transaction—payment of health care benefits. Under section 14009.5, contrary to the preexisting law, payment of health care benefits gives immediate rise to a claim against the decedent contingent only upon the decedent's death with assets in his estate and without a surviving spouse or minor or disabled child.

transfer of the liquor license had been pledged or some right to its transfer been obtained." (128 Cal.App.2d at p. 117.)

Section 14009.5, on the other hand, does change the legal effect of Medi-Cal payments and thus, as construed in the majority opinion, will have a retroactive effect on such payments made before its enactment. This is made clear in *Estate of Messner, supra,* 190 Cal.App.3d 818, 822-823, as follows: "Whether a statute's application is retroactive depends on whether it operates to change the legal effect of past transactions. (*Cole* v. *Fair Oaks Fire Protection Dist.* [*supra*] 43 Cal.3d 148, 153.) Pursuant to this definition, the only way section 14009.5 can operate prospectively is for the Department to be reimbursed for Medi-Cal services rendered after the statute became effective. To conclude otherwise permits the statute to materially affect earlier acts and transactions contrary to the reasonable expectations of the parties. Here, for example, it is undisputed that Messner [the decedent] obtained most of her benefits at a time when the relevant statutory provisions precluded the Department from seeking reimbursement. (See *County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 33 [148 Cal.Rptr. 584, 583 P.2d 109] ['(a)t common law, in the absence of fraud in procuring relief, a recipient was under no obligation to repay the government agency disbursing the charity. (Citations.)'].) In these circumstances, it was certainly reasonable for Messner, as it would be for other similarly situated persons, to expect that her accumulated savings would be distributed in accordance with her respective estate plans and not used to satisfy a claim made under a statute which was not in existence at the time the services were rendered. According to the Department's rationale, if a post-65-year-old person had the misfortune of dying seconds after the statute became effective, that decedent's estate would be subject to a claim for services all of which were rendered *before* the statute's effective date. To permit the statute to operate in a fashion which authorizes the creation of an after-the-fact debt resulting in the partial or total elimination of a person's life savings is a classic illustration of a statute's retroactive application materially changing the legal effect of past transactions."

The majority opinion attempts to justify application of section 14009.5 to previously paid benefits by construing it as a regulation of testamentary disposition and analogizing it to an estate or inheritance tax on transfers of a decedent's property. (*Ante,* p. 9.) Section 14009.5, however, does not purport to restrict or tax testamentary transfers but instead authorizes the department to file a creditor's claim for money previously expended for the decedent's health care. (See Probate Code, former section 700.1, which was enacted simultaneously with section 14009.5 and required an executor or administrator of a decedent who had received Medi-Cal benefits to give special notice to the head of the department, who was given four months

thereafter to perfect a claim. Similar provisions now appear in Probate Code section 9202.)

The majority opinion does not rely solely, however, on the erroneous theory that section 14009.5 merely regulates testamentary disposition, but goes on to address the argument, adopted as a holding in the foregoing quotation from *Messner, supra,* 190 Cal.App.3d 818, "that section 14009.5, as applied here, is retroactive because it creates an 'after-the-fact' debt or liability. If the application of section 14009.5 creates an 'after-the-fact' debt or liability, then it alters a Medi-Cal recipient's vested interest in not having to repay such benefits." (*Ante,* p. 10.)

The majority opinion's answer to this reasoning is to adopt a definition of debt as "a sum of money which is 'certainly and in all events payable' without regard to whether it is payable now or at a future time (*UMF Systems, Inc.* v. *Eltra Corp.* (1976) 17 Cal.3d 753, 756 [132 Cal.Rptr. 129, 553 P.2d 225]" and to assert that therefore, "a sum payable upon some contingency is not a debt until the contingency occurs." (*Ante,* p. 10.) From this it is concluded that under section 14009.5, the department's claim to reimbursement of Medi-Cal payments is not a debt at the time of such payments because the claim is contingent upon the death of the health care recipient with assets against which the claim can be asserted.

As *UMF Systems* makes clear, however, the term "debt" is often regarded as including contingent obligations. This is true, for example, under the statutory scheme considered in that case (former Corp. Code, § 826, authorizing suit on a debt or claim that arose prior to unlawful distribution of corporate assets) and the former Uniform Fraudulent Conveyances Act, which expressly defined "debt" to include a contingent liability (see former Civ. Code, § 3439.01). (17 Cal.3d at pp. 756-759.) (See also Uniform Fraudulent Transfer Act, Civ. Code, § 3439.01, subd. (b) [" 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"], and subd. (d) [" 'Debt' means liability on a claim"].)

For present purposes, the most relevant statutory definitions are those in the Probate Code, under which the department must make the claim authorized by section 14009.5 (Prob. Code, former § 700.1, now § 9202). When section 14009.5 was enacted, the claims required to be filed included those "justly due," "not due when filed or presented," and "contingent," (*id.,* former § 705; see also former § 707, subd. (a)). Probate Code section 9000, enacted in 1987 for purposes of simplification and clarification (see Recommendations Relating to Probate Law, Creditor Claims Against

Decedent's Estate (Jan. 1987) 19 Cal. Law Revision Com. Rep. (1988) p. 303), defines claims that are required to be filed, as follows: "(a) 'Claim' means a demand for payment for any of the following, whether due, not due, or contingent, and whether liquidated or unliquidated: [¶] (1) *Liability of the decedent,* whether arising in contract, tort, or otherwise." (Italics added.) Since the remainder of the definition pertains only to taxes, funeral expenses, and disputes over title to property (Prob. Code, § 9000, subds. (a)(2), (a)(3), & (b)), it is clear that the claim which the director is authorized to file under section 14009.5 is based not on the liability of the estate, or of the personal representative, or of any other survivor, but on the liability of the *decedent.*

Any liability of a decedent necessarily must have existed during the decedent's lifetime, while he or she was still a person. The only event during a decedent's lifetime which could create the decedent's liability enforceable under section 14009.5 is the payment of money for the decedent's health care. Section 14009.5 changes the legal effect of such payment by causing the payment to give rise to a contingent liability of the decedent which would not previously have existed. Thus, as to such payments made before section 14009.5's effective date, "the operation on existing rights would be retroactive 'because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears.' [Citing *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388, 394.]" (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, 153.) No such legislative intent appears here, clearly or otherwise.

Since I conclude that section 14009.5 was not intended to authorize claims for reimbursement of Medi-Cal payments made before the section's effective date, I would reverse the judgment of the Court of Appeal.

Mosk, J., and Broussard, J., concurred.