BILL LOCKYER Attorney General CLAYTON P. ROCHE Deputy Attorney General
THE HONORABLE LLOYD W. PELLMAN, COUNTY COUNSEL, COUNTY OF LOS ANGELES, has requested an opinion on the following question:
Does the prohibition against participation by a board member of the Los Angeles Metropolitan Transit Authority in a contract decision if he or she received in the past four years a campaign contribution exceeding $10 from a person submitting a proposal for the contract apply to (1) contributions received during the four years immediately prior to January 1, 1998, and (2) contributions received from persons who submitted proposals for the contract but were not selected by staff employees for approval and acceptance by the board?
 CONCLUSION
The prohibition against participation by a board member of the Los Angeles Metropolitan Authority in a contract decision if he or she received in the past four years a campaign contribution exceeding $10 from a person submitting a proposal for the contract applies to (1) contributions received during the four years immediately prior to January 1, 1998, and (2) contributions received from persons who submitted proposals for the contract but were not selected by staff employees for approval and acceptance by the board.
 ANALYSIS
In 1992 (Stats. 1992, ch. 60), the Legislature created the Los Angeles County Transportation Authority ("MTA") as "the single successor agency to the Southern California Rapid Transit District and the Los Angeles County Transportation Commission." (Pub. Util. Code, §130050.2)[1] The MTA board consists of 14 members, the majority of whom are elected officials. (§ 130051.)
The question presented for resolution concerns statutory restrictions placed upon MTA board members in awarding contracts to construction companies and other business entities. Does the prohibition against participating in a contract decision if the board member accepted a campaign contribution in excess of $10 "in the past four years" from a person submitting a proposal for the contract apply to contributions received prior to enactment of the statutory prohibition? Does the prohibition also apply to a contract decision in which those who made the contributions were not recommended by MTA staff employees for obtaining the contract? We conclude that the statutory prohibition against participating in contract decisions applies in both instances.
The focus of our opinion is upon the provisions of section130051.20, which state:
 "(a)(1) No construction company, engineering firm, consultant, legal firm, or any company, vendor, or business entity seeking a contract with the Los Angeles County Metropolitan Transportation Authority shall give to a member, alternate member, employee of the authority, or to any member of their immediate families, a contribution of over ten dollars ($10) in value or amount. A `contribution' includes contributions to candidates or their committees in any federal, state, or local election.
 "(2) Neither the owner, an employee, or any member of their immediate families, of any construction company, engineering firm, consultant, legal firm, or any company, vendor, or business entity seeking a contract with the authority shall make a contribution of over ten dollars ($10) in value or amount to a member, alternate member, or employee of the authority, or to any member of their immediate families.
 "(3) No member, alternate member, or employee of the authority, or member of their immediate families, shall accept, solicit, or direct a contribution of over ten dollars ($10) in value or amount from any construction company, engineering firm, consultant, legal firm, or any company, vendor, or business entity seeking a contract with the authority.
 "(4) No member, alternate member, or employee of the authority shall make or participate in, or use his or her official position to influence, a contract decision if the member, alternate member, or employee has knowingly accepted a contribution of over ten dollars ($10) in value in the past four years from a participant, or its agent, involved in the contract decision.
 "(5) No member, alternate member, or employee of the authority, or member of their immediate families shall accept, solicit, or direct a contribution of over ten dollars ($10) in value or amount from a construction company, engineering firm, consultant, legal firm, or any company, vendor, or business entity that has contracted with the authority in the preceding four years.
 "(b) A member, alternate member, or employee of the authority who has participated as a decisionmaker in the preparation, evaluation, award, or implementation of a contract and who leaves the authority shall not, within three years of leaving the authority, accept employment with any company, vendor, or business entity that was awarded a contract as a result of his or her participation, evaluation, award, or implementation of that contract."
In analyzing the terms of section 130051.20, we may apply well recognized principles of statutory construction. "When construing a statute, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "`Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.'" (Woods v. Young (1991) 53 Cal.3d 315, 323.) "Words used in a statute . . . should be given the meaning they bear in ordinary use." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." (Harris v. Capital Growth Investors XIV (1991)52 Cal.3d 1142, 1159.) "Committee reports are often useful in determining the Legislature's intent." (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 646.)
1. Prospective Application of the Prohibition
Section 130051.20 was enacted in 1997 (Stats. 1997, ch. 657), effective January 1, 1998. (Cal. Const., art. IV, § 8, subd. (c).) The main purpose of the prohibition was described in the report of the Senate Rules Committee dated September 4, 1997, as follows:
 ". . . According to the author's office, this bill was introduced in response to recent events relating to the authority and its contract[s]. The concern is that any undue influence by contractors and/or award of contracts based on any criteria other than cost-effectiveness is not in the public interest and that a perception of wrongdoing is harmful to the interest of public transportation.
 "Also, according to the author's office, in 1994 companies doing or seeking business with the authority paid $2.1 million to lobbyists registered at the authority. That same year, members of the authority board of directors received $112,000 in contributions from special interests. With media investigations into the authority's problem — plagued construction projects, the temporary suspension of state and federal construction funds, lawsuits and an on-going federal criminal investigation, public confidence in the agency has suffered."
Clearly, the Legislature was concerned with the receipt of campaign contributions by MTA board members prior to January 1, 1998. The Legislature specifically focused upon the "perception of wrongdoing" with respect thereto.
Under section 130051.20, subdivisions (a)(1), (a)(2), (a)(3), and (a)(5), campaign contributions in excess of $10 may not be given to MTA board members on and after January 1, 1998. No MTA board member may participate in a contract decision on and after January 1, 1998, under specified conditions. (§ 130051.20, subd. (a)(4).) On and after January 1, 1998, an MTA board member may not accept employment with another entity under specified conditions. (§130051.20, subd. (b).) Hence, all terms of the statute apply on and after January 1, 1998. Nothing in section 130051.20 may be said to change the legal effect of past events. Campaign contributions, for example, that were lawfully made on December 31, 1997, remain lawfully received under the language of the statute; MTA board members are not required to return such contributions.[2]
Accordingly, section 130051.20 comports with "the basic rule that statutes operate prospectively unless the Legislature has clearly indicated its intended retroactive or retrospective application. [Citations.]" (Naegele v. R.J. Reynolds Tobacco Co. (2000) 81 Cal.4th 503,515.) In a long line of cases, California courts have recognized that "[a] law is not retroactive `merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. [Citation.]'" (People v. Grant (1999) 20 Cal.4th 150,157; see 20th Century Ins. Co. v. Garamendi (1994) 8 Cal.4th 216,281-282; Kizer v. Hanna (1989) 48 Cal.3d 1, 7-9; Burks v. Poppy Construction Co. (1962) 57 Cal.2d 463, 474.) Here, the prohibition against participating in a contract decision (§ 130051.20, subd. (a)(4)) is prospective in applying only to decisions on and after January 1, 1998, although its application in a particular case may be dependent upon the receipt of campaign contributions prior to January 1, 1998.
2. Staff Rejected Contract Proposals
The second aspect of the question presented concerns whether the prohibition applies when the campaign contribution was given by a person who was not recommended to the MTA board members for obtaining the contract. To understand this part of the inquiry, we must consider the terms of section 130680, which provide in part:
 "(a) The chief executive officer shall be responsible for ensuring the MTA has an independent professional procurement staff. The chief executive officer and designated procurement staff shall be responsible for conducting an independent autonomous procurement process in accordance with state and federal law.
 "(b) Board members shall use objective judgment in voting on a procurement award and base their decision on the criteria established in the procurement documents.
 "(c) Board members or their staff shall not attempt to influence contract awards.
 "(d) During any procurement process, board members or their staff shall not communicate with MTA staff regarding the procurement.
 "(e) Before the staff recommendation for an award is made public, board members or their staff shall only communicate with the chief executive officer or his or her designee regarding the procurement. The chief executive officer shall keep a log of those communications and shall report those communications and responses in writing at the board meeting where action on the procurement is scheduled.
 "(f) Board members or their staff shall not attempt to obtain information about the recommendation of the award of a contract until the recommendation is made public."
Consequently, the MTA has procedures in place that require its "independent professional procurement staff" to make a single recommendation to MTA board members for the award of a particular contract. Does the prohibition apply when the campaign contribution was received from a contract bidder who MTA staff employees did not recommend to the board for approval?
Subdivision (a)(4) of section 130051.20 refers to a campaign contribution "from a participant, or its agent involved in the contract decision." "Participant" is not defined for purposes of the statute. While the term is defined for purposes of sections130600-130730
(§ 130600, subd. (f)), such definition is plainly inapplicable to section 130051.20's provisions.
Undoubtedly, the MTA procurement staff employees are themselves subject to the statutory prohibition since they, in effect, make the contract decision subject only to approval or rejection by the MTA board members. At the procurement staff level, all contract bidders would necessarily be "participants" in the contract decision made by the staff employees. We are advised that when the "finalist" is selected and recommended to the MTA board members, the board members are informed of the identity of all contract bidders. Full disclosure is made in order for the board members to comply with the separate and distinct requirements of the Political Reform Act of 1974. (See, e.g., Gov. Code, § 84308.) Thus, when the MTA board members make their contract decision, their knowledge of all bidders might sway a member's vote as to whether to accept or reject the staff's single recommendation. Under these particular circumstances, we have no doubt that all contract bidders are to be considered "participants" at both the staff level and the MTA board level for purposes of section 130051.20.
Our conclusion is strongly supported by the legislative committee reports that describe the details of the prohibition. For example, in the report of the Assembly Committee on Transportation for its hearing on July 7, 1997, the goals of the legislation were described as including:
 "(1) Prohibits any firm seeking a contract with the MTA from making a gift or contribution of over $10 to any member, alternate member, or employee of the MTA, or to a member of their immediate families. `Contribution' is defined as a contribution to a candidate or their committees in any federal, state or local election.
 "(2) Prohibits the owner of a firm seeking a contract with the MTA, an employee of the firm, or a member of their immediate family, from making a gift or contribution of over $10 to any member, alternate member or employee of the MTA, or to any member of their immediate family.
 "(3) Prohibits any member, alternate member, or employee of the MTA, or any member of their immediate family, from accepting a gift or contribution of over $10 from any firm seeking a contract with the MTA."
Such language in this and the other committee reports demonstrates that the prohibition against participating in a contract decision applies when a contribution is received from any bidder "seeking" the contract.
We thus conclude that the prohibition against participation by an MTA board member in a contract decision if he or she received in the past four years a campaign contribution exceeding $10 from a person submitting a proposal for the contract applies to (1) contributions received during the four years immediately prior to January 1, 1998, and (2) contributions received from persons who submitted proposals for the contract but were not selected by staff employees for approval and acceptance by the board.
[1] All section references are to the Public Utilities Code unless otherwise indicated.
[2] Of course, if an MTA board member were to return such a contribution, he or she would still be prohibited from participating in the contract decision as proscribed by the statute. Once the contribution is "knowingly accepted," the prohibition applies under the terms of section 130051.20, subdivision (a)(4).