Filed 1/13/22 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAN DIEGO UNIFIED SCHOOL DISTRICT et al., | C090477 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2017-80002696-CU-WM-GDS ) |
| v. | |
| STATE OF CALIFORNIA et al., | ORDER MODIFYING OPINION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

     APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

     Christian M. Keiner for Plaintiffs and Appellants.

     Rob Bonta, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Paul Stein, Deputy Attorney General, Aaron Jones, Deputy Attorney General, for Defendants and Respondents.

1

THE COURT:

It is ordered that the opinion filed herein on January 11, 2022, be modified as follows:

On page 8, the sentence that states, "The trial court, however, rejected the argument" is corrected to state as follows: "The court, however, rejected the argument."

_____\s\_____,
BLEASE, J.

We concur:

_____\s\_____,
RAYE, P. J.

_____\s\_____,
HULL, J.

2

Filed 1/11/22 (unmodified opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAN DIEGO UNIFIED SCHOOL DISTRICT et al., | C090477 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2017-80002696-CU-WM-GDS ) |
| v. | |
| STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Sueyoshi, Richard K. , Judge.  Affirmed.

Christian M. Keiner for Plaintiffs and Appellants.

Rob Banta, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Paul Stein, Deputy Attorney General, Aaron Jones, Deputy Attorney General, for Defendants and Respondents.

1

Under article XIII B, section 6 of the California Constitution, the State of California must reimburse local governments when it requires them to provide "a new program or higher level of service." In 2017 and 2018, the Legislature enacted two statutes, Government Code sections 17581.96 and 17581.97,[1] in part to fulfill the state's obligation to reimburse school districts under this constitutional provision. Both statutes provided one-time funding to school districts in a certain year, either in fiscal year 2017-2018 or 2018-2019, and both stated that the provided funds "shall first satisfy any outstanding" amounts owed to the school districts under article XIII B, section 6.

Appellants are nine school districts[2] that objected to these two statutes in a suit against the State of California and the State Controller. In their view, article XIII B, section 6 prohibits the state from reimbursing school districts in the manner that sections 17581.96 and 17581.97 allow. The trial court, however, disagreed, finding no merit to Appellants' claim. We affirm.

BACKGROUND

"Enacted by initiative in 1979, article XIII B, section 6, subdivision (a) of the California Constitution says: 'Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse that local government for the costs of the program or increased level of service. . . ,' with certain exceptions not relevant here." (*California School Boards Assn. v. State of California* (2019) 8 Cal.5th 713, 719-720 (*CSBA*).) This

---

[1] Undesignated statutory references are to the Government Code.

[2] The nine appellants are San Diego Unified School District, San Jose Unified School District, Clovis Unified School District, Grossmont Union High School District, Newport-Mesa Unified School District, Poway Unified School District, Castro Valley Unified School District, East Side Union High School District, and Fullerton Joint Union High School District.

provision serves " 'to preclude the state from shifting financial responsibility for carrying out governmental functions to local agencies.' [Citation.]" (*Id.* at p. 724.)

In 2017, the Legislature enacted section 17581.96 in part to fulfill its obligation to reimburse school districts for the costs of state-mandated programs. (Stats. 2017, ch. 15, § 67.) In that statute, the Legislature appropriated $876,581,000 for distribution to school districts for the 2017-2018 fiscal year, with funds distributed "on the basis of an equal amount per unit of regular average daily attendance." (§ 17581.96, subds. (a), (b).) Per the statute's terms, these funds would "first" serve as reimbursement for "any outstanding claims pursuant to Section 6 of Article XIII B" and, to the extent any funds remained, the remaining funds would then serve as unrestricted state funding that could be used as each school district believed appropriate. In particular, section 17581.96, subdivision (c) states: "Allocations made pursuant to this section shall first satisfy any outstanding claims pursuant to Section 6 of Article XIII B of the California Constitution for reimbursement of state-mandated local program costs for any fiscal year. . . . The Controller shall apply amounts received by each school district against any balances of unpaid claims for reimbursement of state-mandated local program costs and interest in chronological order beginning with the earliest claim. . . ." Section 17581.96, subdivision (d)(1) adds: "The governing board of a school district may expend the one-time funds received pursuant to this section for any purpose, as determined by the governing board of the school district."

In 2018, the Legislature enacted a similar statute in section 17581.97. (Stats. 2017, ch. 426, § 33.) In this statute, the Legislature appropriated $697,759,000 for distribution to school districts for the 2018-2019 fiscal year, with funds distributed "on the basis of an equal amount per unit of regular average daily attendance." (§ 17581.97, subds. (a), (b).) Similar to section 17581.96, section 17581.97, subdivision (d) states: "Allocations made pursuant to subdivision (b), less [certain] amount[s] withheld [for certain school districts], shall first satisfy any outstanding claims pursuant to Section 6 of

3

Article XIII B of the California Constitution for reimbursement of state-mandated local program costs for any fiscal year. . . . The Controller shall apply amounts received by each school district against any balances of unpaid claims for reimbursement of state-mandated local program costs and interest in chronological order beginning with the earliest claim. . . ." Also similar to section 17581.96, section 17581.97, subdivision (e)(1) adds: "The governing board of a school district may expend the one-time funds allocated pursuant to this section for any purpose."

In 2017, after the enactment of section 17581.96, Appellants challenged the statute in a petition for writ of mandate and complaint filed against the State of California and the State Controller, Betty Yee. A year later, after the enactment of section 17581.97, Appellants amended their petition and complaint to challenge that statute too. Appellants alleged that both statutes "violate[] the California Constitution and the Government Code." They principally reasoned that the two statutes " 'erase[d]' mandate claim amounts fully due and owing to" them under article XIII B, section 6 without providing any actual funding.

The trial court disagreed. According to the court, "[n]either section 17[5]81.96 nor section 17581.97 *eliminates*" (or, to use Appellants' words, "erases") "any outstanding mandate claims without proper payment. They call for *payment* of the claims." The court thus denied Appellants' petition and entered judgment in favor of the State of California and the State Controller.

Appellants appealed.[3]

_____

[3] Appellants ask us to judicially notice several documents that they allege are relevant to show "the subvention amounts due and owing the Districts that the State has 'erased' since the 2015-16 fiscal year." Some of their offered documents purport to show state funds that were allocated to local educational agencies in previous years and applied against their outstanding claims under article XIII B, section 6—which are perhaps the documents that Appellants describe as "eras[ing]" the amounts owed to them. One 2015 letter from the California Department of Education, for example, stated that certain funds

4

DISCUSSION

Article XIII B, section 6 of the California Constitution requires the state to "provide a subvention of funds to reimburse" local agencies for the cost of state mandates. (Art. XIII B, § 6, subd. (a).) The Legislature, as discussed, enacted sections 17581.96 and 17581.97 in part to fulfill its obligation to reimburse school districts for the costs of state mandates. In these two statutes, the Legislature provided one-time funding to each school district that would "first" serve as reimbursement for "any outstanding claims pursuant to Section 6 of Article XIII B" and, to the extent any funds remained, would then serve as unrestricted state funding that the school district could expend as it saw fit. (§§ 17581.96, subds. (c), (d)(1), 17581.97, subds. (d), (e)(1).)

According to Appellants, these statutes conflict with article XIII B, section 6's requirements for several reasons. First, without any clear explanation, they assert that sections 17581.96 and 17581.97 "erased" the amounts owed to them "without any subvention." But the state provided funding that totaled over a billion dollars in these two statutes, part of which explicitly served to reimburse school districts for state mandates. (§§ 17581.96, subd. (c), 17581.97, subd. (d).) Appellants, perhaps, would have preferred even more funding, but they cannot claim that they received no reimbursement at all. As the trial court explained, "[n]either section 17[5]81.96 nor section 17581.97 *eliminates* any outstanding mandate claims without proper payment. They call for *payment* of the claims."

---

allocated to local educational agencies under section 17581.8 "shall first satisfy any outstanding claims pursuant to Section 6 of Article XIII B." But none of these documents appear to concern the statutes before us. Nor do they appear at all relevant to our resolution of the limited issues raised in this appeal. We thus deny their request. (*National Asian American Coalition v. Newsom* (2019) 33 Cal.App.5th 993, 1002 [declining to take judicial notice of materials that were "irrelevant to our resolution of the issues raised in this appeal"].)

5

Second, Appellants argue, because the Legislature used some of the funds distributed under sections 17581.96 and 17581.97 to satisfy its reimbursement obligations under article XIII B, section 6, school districts are wrongly left with less money to spend "to advance [their] local missions." But nothing in article XIII B, section 6 requires the state to provide the funding that school districts desire to advance their "local missions." As our Supreme Court has demonstrated, a statute does not violate article XIII B, section 6 simply because it leaves a school district with less unrestricted state funding than it may have preferred. (*CSBA, supra*, 8 Cal.5th at p. 728 ["article XIII B, section 6 does not preclude the Legislature from adjusting the mix of state funding allocated for unrestricted versus mandate purposes"]; see also *Department of Finance v. Commission on State Mandates* (2003) 30 Cal.4th 727, 747-748.) And although a separate constitutional provision, article XVI, section 8, "prescribes a minimum level of state funding for education" (*CSBA, supra*, 8 Cal.5th at p. 723), Appellants never suggest that they lack the requisite minimum level of funding under this distinct provision.

Third, Appellants assert that sections 17581.96 and 17581.97 failed to provide sufficient funding to cover "the mandate costs . . . because . . . the Districts did not receive any subvention based upon the amount of the actual uncontested due and owing mandate claims." But, again, to the extent Appellants believe that they "did not receive any subvention" under the statutes, we disagree. And to the extent Appellants believe that they did not receive sufficient subvention, we disagree there too. Appellants have not identified any school district that received insufficient funding under sections 17581.96 and 17581.97 to satisfy outstanding claims for mandate costs. And even if they had, that would not reveal a flaw in the statutes in any event. Nothing in the statutes suggests, as Appellants appear to believe, that the provided funds will be deemed to satisfy all outstanding claims for costs, even if the provided funds fall short of covering the full amount of these costs. The statutes simply state that the "amounts received by each school district [will first be applied] against any balances of unpaid claims for

6

reimbursement of state-mandated local program costs and interest," not that the amounts received by each school district will be deemed to satisfy all outstanding amounts owed to that district.  (§§ 17581.96, subd. (c), 17581.97, subd. (d).)

Fourth, and relatedly, Appellants claim that sections 17581.96 and 17581.97 failed to provide sufficient funding to cover "the mandate costs. . . because . . . the Districts did not receive the unrestricted 'one time' funds which other school districts, county offices of education, community college districts, and even charter schools received to spend on local programs."  But this is a non sequitur.  Although, under the two statutes, some school districts may have received less *unrestricted* state funding per student than certain other districts, that does not tend to show that these districts received insufficient *restricted* state funding to cover the costs of state mandates.  To the extent, moreover, that Appellants believe that all school districts must receive the same amount of unrestricted state funding per student under article XIII B, section 6, we reject the argument.  That provision requires the state to reimburse local agencies for the cost of state mandates; it does not require the state to supply equivalent per-student funding for all school districts.

Fifth, Appellants claim that "the statutes are unconstitutional under the California Supreme Court decision in" *CSBA, supra*, 8 Cal.5th 713.  In that case, the court considered two statutes that restricted the use of certain funds that the state annually provides to local education agencies.  (*Id.* at p. 719.)  Before the statutes, local education agencies could use these funds however they pleased.  (*Ibid.*)  But after the statutes, these agencies needed to treat a portion of the funds as "offsetting revenues" for the future costs of two state mandates.  (*Ibid.*)  Challenging this change, the plaintiffs in *CSBA* alleged that the state's decision to designate previously unrestricted state funding as mandate funding, rather than allocate new mandate funding, " 'allows the State to eliminate a mandate obligation without actually providing any payment by simply identifying existing funding and designating it "offsetting revenues." ' "  (*Id.* at p. 724.)

7

The plaintiffs, in other words, raised an argument not too different from Appellants' own claim that the state "erased" a mandate obligation without actually providing any payment by "simply designating unrestricted state funding as 'satisfying' mandate reimbursement."

The trial court, however, rejected the argument. Article XIII B, section 6, the court explained, leaves the Legislature with "broad power to decide how best to meet the reimbursement requirement," and "[h]ere, the Legislature acted within its authority when it enacted two statutes directing the use of previously non-mandate state funding to prospectively cover the costs of" the two state mandates. (*CSBA, supra*, 8 Cal.5th at p. 726.) The plaintiffs also, among other things, alleged that the statutes improperly left school districts with less funding for other programs. But the court rejected this claim too, finding that "general claims of insufficient funding, without more, do not make out a constitutional violation." (*Id.* at p. 727.) In the end, the court found nothing in the challenged statutes that violated article XIII B, section 6. (*Ibid.*)

From all this, Appellants conclude that the trial court implicitly created a new " 'prospective' prong" for evaluating compliance with article XIII B, section 6. Under this new rule, Appellants argue, statutes that provide funding to reimburse local agencies for state mandates may only cover *future* costs; they cannot cover *past* costs that have already been incurred. Because, Appellants then argue, the statutes here seek to reimburse school districts for past costs, they are wrongly "retroactive." Amicus curiae California School Boards Association's Education Legal Alliance (CSBA) offers a similar argument. It claims that the statutes here, in serving to reimburse school districts for costs that have already been incurred, violate the general presumption against the retroactive application of statutes.

Neither claim has any merit. To begin, were we to accept Appellants' and CSBA's views, then the state would apparently have no ability to reimburse Appellants at all, for any effort to repay the amounts owed would be thwarted by the rule against

8

applying statutes retroactively. That, however, is not the law. It is not the law of *CSBA*, which never mentioned or suggested the type of " 'prospective' prong" that Appellants allege. Nor is it the law under the general presumption against the retroactive application of statutes. (See *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 ["A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so."].) "A statute has retrospective [or retroactive] effect when it substantially changes the legal consequences of past events." (*Ibid.*) But a statute that simply supplies money to pay for an old debt does not "change[] the legal consequences of past events." (See *ibid.* ["A statute does not operate retrospectively simply because its application depends on facts or conditions existing before its enactment."]; see also *Kizer v. Hanna* (1989) 48 Cal.3d 1, 7-8.) And because this characterization fits the statutes here, we cannot say that these statutes implicate in any way the general presumption against the retroactive application of statutes.

Sixth, apart from their several arguments under article XIII B, section 6, Appellants assert that sections 17581.96 and 17581.97 "conflict[] with the statutory scheme that implements the constitutional protection." In support, they quote or summarize six statutes—namely, sections 17514, 17551, 17561, 17562, 17581, 17612— and then contend sections 17581.96 and 17581.97 are improper because they "seek[] to completely erase the debts owed by the State by deeming funding provided to all local educational agencies, regardless of any potential mandates owed to them individually, as subvention for those school districts with outstanding claims for State-mandated costs incurred many years previously." But Appellants never tie the six statutes they reference to their argument. Considering the statute they cite nearest to their claim, section 17562, they perhaps believe that the State Controller's obligation to annually prepare reports about state mandates under section 17562 conflicts with the requirements of sections 17581.96 and 17581.97. But to the extent that is their argument, Appellants never explain why that is so. Nor do they explain why, in the event of a conflict, an older

9

statute (§ 17562) could somehow nullify two newer statutes (§§ 17581.96 and 17581.97). (See *Governing Board v. Mann* (1977) 18 Cal.3d 819, 828 ["when, as here, a subsequently enacted specific statute directly conflicts with an earlier, more general provision, it is settled that the subsequent legislation effects a limited repeal of the former statute to the extent that the two are irreconcilable."].) Because Appellants never explain their argument, and because we fail to understand their intended point, we treat their argument as forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

Finally, CSBA argues that "requiring [Appellants] to utilize one-time funding intended for other purposes is inconsistent with and infringes upon school districts' constitutionally and statutorily designed local control and flexibility to use education funding to address diverse and unique local needs through equally diverse and unique solutions." But the premise of CSBA's argument—that the funding provided under sections 17581.96 and 17581.97 was "intended for other purposes"—is wrong. CSBA supposes that the Legislature intended the funding provided in these statutes to be spent solely in the manner that school districts "s[aw] fit." But the text of the statutes plainly evinces a different intent. In both sections 17581.96 and 17581.97, the Legislature explained that the provided funding "shall first satisfy any outstanding claims pursuant to Section 6 of Article XIII B of the California Constitution for reimbursement of state-mandated local program costs for any fiscal year." (§§ 17581.96, subd. (c), 17581.97, subd. (d).) Considering this clear language on the Legislature's desired use of the provided funds, we cannot say, as CSBA would have us, that all the funding in the statutes was actually "intended for other purposes."

10

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


\s\
BLEASE, J.


We concur:


\s\
RAYE, P. J.


\s\
HULL, J.

11