TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-209 |
| of | : | |
| | : | JULY 14, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

THE HONORABLE MARIAN BERGESON, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

When a redevelopment agency calculates the 20 percent "set-aside" for low-and moderate-income housing, is the set-aside based upon the total tax increment revenues allocated to the agency irrespective of any subsequent transfers made by the agency to other public entities?

CONCLUSION

When a redevelopment agency calculates the 20 percent "set-aside" for low-and moderate-income housing, the set-aside is based upon the total tax increment revenues allocated to the agency irrespective of any subsequent transfers made by the agency to other public entities.

ANALYSIS

Under the Community Redevelopment Law (Health & Saf. Code, §§ 33000-33855),[1] redevelopment agencies are formed in communities throughout California to bring about "(1) the creation of physical, social, economic, and environmental conditions to remove and prevent the recurrence of blight; (2) the creation of jobs and low-to-moderate income housing; and (3) the attraction of private investment toward these ends. [Citation.]" (*Marek* v. *Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1082.)

In carrying out these purposes, a redevelopment agency generally finances its projects through the issuance of bonds and repays the indebtedness with property tax "increment" revenues resulting from an increase in property values due to new construction in and revitalization of the

_____

[1]All section references hereafter are to the Health and Safety Code.

project area.  (See *Bell Redevelopment Agency* v. *Woosley* (1985) 169 Cal.App.3d 24, 27; 75 Ops.Cal.Atty.Gen. 324, 325-326 (1990).)

The procedure of allocating property tax increment revenues to a redevelopment agency was described by the Supreme Court in *Redevelopment Agency of San Bernardino* v. *County of San Bernardino* (1978) 21 Cal.3d 255, 259, as follows:

". . . [I]f, after a redevelopment project has been approved, the assessed valuation of taxable property in the project increases, the taxes levied on such property in the project area are divided between the taxing agency and the redevelopment agency.  The taxing agency receives the same amount of money it would have realized under the assessed valuation existing at the time the project was approved, while the additional money resulting from the rise in assessed valuation is placed in a special fund for repayment of indebtedness incurred in financing the project."

With respect to this property tax allocation procedure, we are asked to determine the relationship between five statutory provisions of the Community Redevelopment Law: sections 33334.2, 33401, 33446, 33670, and 33676.  Section 33334.2 requires that at least 20 percent of the tax increment revenues allocated to a redevelopment agency under the terms of section 33670 are to be used for the purposes of "increasing, improving, and preserving the community's supply of low- and moderate-income housing . . . ."  The question presented is whether this 20 percent "set-aside" requirement must be applied to the total amount of tax increment revenues generated from a redevelopment project area even though some of such revenues (1) are subject to "pass-through agreements" designed to "alleviate any financial burden or detriment caused to any taxing agency by [the] redevelopment project" (§ 33401), (2) are slated for school building construction (§ 33446), or (3) are actually allocated to other public entities (§ 33676).  We conclude that the 20 percent set-aside applies to all taxes allocated to a redevelopment agency irrespective of pass-through transfers (§ 33401) or school construction funding (§ 33446), but not to tax increment revenues actually allocated to other public entities (§ 33676).

Subdivision (a) of section 33334.2 states in part:

"Not less than 20 percent of all taxes which are allocated to the agency pursuant to Section 33670 shall be used by the agency for the purposes of increasing, improving, and preserving the community's supply of low- and moderate-income housing . . . unless one of the following findings is made annually by resolution:

"(1) That no need exists in the community to improve, increase, or preserve the supply of low- and moderate-income housing . . . and that this finding is consistent with the housing element of the community's general plan . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) That some stated percentage less than 20 percent of the taxes which are allocated to the agency pursuant to Section 33670 is sufficient to meet the housing needs of the community . . . and that this finding is consistent with the housing element of the community's general plan . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) That the community is making a substantial effort to meet its existing and projected housing needs, including its share of the regional housing needs, with respect to persons and families of low and moderate income, particularly very low income households, as identified in the housing element of the community's general plan . . . and that this effort, consisting of direct financial contributions of local funds used to increase and improve the supply of housing affordable to persons and families of low or moderate income and very low income households, is equivalent in impact to the funds otherwise required to be set aside pursuant to this section . . . ."

Section 33334.2 plainly requires that "all" taxes allocated to a redevelopment agency pursuant to section 33670 are to serve as the amount upon which the 20 percent set-aside is calculated. Exceptions to the 20 percent set-aside requirement are set forth in section 33334.2, but they are applicable only in limited circumstances. The statute contains no explicit or implicit exception for funds transferred by a redevelopment agency to other public entities.

Section 33670 provides:

"Any redevelopment plan may contain a provision that taxes . . . levied upon taxable property in a redevelopment project each year by or for the benefit of the State of California, any city, county, city and county, district, or other public corporation (hereinafter sometimes called "taxing agencies") . . . shall be divided as follows:

"(a)      That portion of the taxes . . . levied each year by or for each of the taxing agencies upon the . . . assessed value of the taxable property . . . as shown upon the assessment roll . . . last equalized prior to the effective date of the ordinance [approving the redevelopment plan], shall be allocated to and when collected shall be paid to the respective taxing agencies . . . .

"(b)      Except as provided in subdivision (e), that portion of the levied taxes each year in excess of that amount [identified in subdivision (a)] shall be allocated to and when collected shall be paid into a special fund of the redevelopment agency . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) That portion of the taxes in excess of the amount identified in subdivision (a) which are attributable to a tax rate levied by a taxing agency for the purpose of producing revenues in an amount sufficient to make annual repayments of the principal of, and the interest on, any bonded indebtedness for the acquisition or improvement of real property shall be allocated to, and when collected shall be paid into, the fund of that taxing agency. . . ."

Under section 33670, the property taxes from the project area are allocated to the various taxing agencies pursuant to subdivisions (a) and (e), and the redevelopment agency is allocated its incremental share pursuant to subdivision (b). The redevelopment agency's share is paid into its "special fund." (§ 33675; *Marek* v. *Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1086.)

The Community Redevelopment Law, however, allows tax increment funds to be used by other public entities pursuant to three statutory provisions, sections 33401, 33446, and

33676. The first authorizes a redevelopment agency to make additional payments to a taxing agency for the purpose of alleviating a financial burden or detriment caused to the taxing agency by the redevelopment project. These payments are made under what are commonly referred to as "pass-through agreements." Specifically, section 33401, subdivision (b) provides in part:

> "The agency may also pay to any taxing agency with territory located within a project area other than the community which has adopted the project, any amounts of money which the agency has found are necessary and appropriate to alleviate any financial burden or detriment caused to any taxing agency by a redevelopment project. The payments to a taxing agency in any single year shall not exceed the amount of property tax revenues which would have been received by that taxing agency if all the property tax revenues from the project area had been allocated to all the affected taxing agencies without regard to the division of taxes required by Section 33670 . . . ."

It is readily apparent that section 33401 does not alter the amount of tax increment funds to be allocated to a redevelopment agency. The statute does not create a mechanism for allowing tax increment revenues to bypass a redevelopment agency; such revenues must still be received by the redevelopment agency before they may be shared with or passed through to a taxing agency.[2] Section 33401 merely provides a means whereby revenues which have already undergone a process of allocation and payment to a redevelopment agency may then be paid out to various taxing agencies under specified conditions. We thus conclude that revenues which "pass through" the redevelopment agency in this manner are part of the funds that are subject to the 20 percent set-aside of section 33334.2.

Section 33446 provides a second type of agreement involving the use of a redevelopment agency's tax increment revenues for the benefit of another public entity. Section 33446 states in part:

> "The governing board of any school district may enter into an agreement with an agency under which the agency shall construct, or cause to be constructed, a building or buildings to be used by the district upon a designated site within a project area and, pursuant to such agreement, the district may lease such buildings and site. Such agreement shall provide that the title to such building or buildings and site shall vest in the district at the expiration of such lease, and may provide the means or method by which the title to the building or buildings and the site shall vest in the district prior to the expiration of such lease . . . ."

Unlike the transfer of funds authorized by section 33401, a redevelopment agency's use of funds pursuant to section 33446 is not a true "pass-through," but is instead an expenditure of redevelopment agency funds for the benefit of a school district. These funds are directly expended by the redevelopment agency on school construction and are never received by the school district. Unquestionably the revenues involved in the expenditure have already been allocated to the redevelopment agency under the terms of section 33670 and are therefore subject to the 20 percent set-aside provision of section 33334.2.

---

[2]Section 33675 requires the tax increment revenues to be "allocated and paid to the [redevelopment] agency by the county auditor." Although a pass-through agreement may provide for a taxing agency to be paid directly by the county auditor, such an arrangement would only be for the sake of convenience and would not affect the legal character of the funds.

The final Community Redevelopment Law provision under consideration here is section 33676, subdivision (a). It reads in part:

"Prior to the adoption by the legislative body of a redevelopment plan providing for tax-increment financing pursuant to Section 33670 . . . any affected taxing agency may elect, and every school and community college district shall elect, to be allocated, in addition to the portion of taxes allocated to the affected taxing agency pursuant to subdivision (a) of Section 33670, all or any portion of the tax revenues allocated to the agency pursuant to subdivision (b) of Section 33670 attributable to one or more of the following:

"(1)     Increases in the rate of tax imposed for the benefit of the taxing agency which levy occurs after the tax year in which the ordinance adopting the redevelopment plan becomes effective.

"(2)     Increases in the assessed value of the taxable property . . . which are, or otherwise would be, calculated annually pursuant to subdivision (f) of Section 110.1 of the Revenue and Taxation Code.

"(3)     If any agency pursuant to Section 33354.5 amends a redevelopment plan which does not utilize tax increment financing to add tax increment financing, and pursuant to subdivision (a) of Section 33670 uses the assessment roll last equalized prior to the effective date of the ordinance originally adopting the redevelopment plan, an affected taxing agency may elect to be allocated all or any portion of the tax revenues allocated to the agency pursuant to subdivision (b) of Section 33670 which the affected taxing agency would receive if the agency were to use the assessment roll last equalized prior to the effective date of the ordinance amending the redevelopment plan to add tax increment financing."[3]

We believe that section 33676 has the effect of directly allocating to other public entities certain portions of the tax revenues that would ordinarily be allocated to a redevelopment agency. Thus, it does not concern a "pass-through" of tax revenues from a redevelopment agency. If the taxing agencies elect to receive the amounts to which they are statutorily entitled, those revenues are never allocated to the redevelopment agency pursuant to section 33670. As the 20 percent set-aside for low- and moderate-income housing under section 33334.2 is based on amounts effectively allocated to the redevelopment agency by section 33670, that requirement cannot be said to be applicable to revenues allocated to other public entities pursuant to 33676. We conclude that such funds, unlike those subject to pass-through agreements, do in fact bypass the redevelopment agency through the allocation procedure.

The foregoing analysis of the relationship between the five statutes in question follow well established principles of statutory construction. "If a statute's language is clear, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 8.) "It is a basic principle of statutory construction that where the language is clear the courts may not insert qualifying provisions not included in the plain language of the statute." (*Crespin* v. *Kizer* (1990) 226 Cal.App.3d 498, 511.)

_____

[3]Subdivision (f) of section 110.1 of the Revenue and Taxation Code allows an increase in assessed values based upon an inflation factor "not to exceed 2 percent for any given year." (Cal. Const., art. XIII A, § 2, subd. (b).)

Our review of the pertinent California Redevelopment Law provisions does not evince any ambiguity in the application of the 20 percent set-aside requirement contained in section 33334.2.  The plain language of these statutes indicates that the 20 percent set-aside for low- and moderate-income housing is to be based on the total amount of tax increment revenues allocated under section 33670 -- without reduction for amounts paid by the redevelopment agency to taxing agencies under the terms of section 33401 or spent by the redevelopment agency on school construction pursuant to the provisions of section 33446.  However, revenues allocated to taxing agencies under the terms of section 33676 do bypass the redevelopment agency through the allocation procedure and are therefore not subject to the 20 percent set-aside requirement.  These conclusions are consistent with the emphasis that the Legislature has historically given to expanding the supply of low- and moderate-income housing through redevelopment.  (See, e.g., §§ 33071, 33334.3, 33334.6.)  They are also consistent with the Legislature's specific use of exceptions where it has desired to exclude certain tax revenues from the operation of a Community Redevelopment Law provision.  (See, e.g., § 33760, subds. (d), (e).)

On occasion, the plain meaning of a statute has not been followed by the courts if the application of the statutory terms would frustrate the manifest purposes of the legislation as a whole or lead to absurd results.  (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113-114; *Del Mar* v. *Caspe* (1990) 222 Cal.App.3d 1316, 1333.)  However, because the expansion of affordable housing is a declared purpose of the Community Redevelopment Law and applying the 20 percent set-aside to all taxes allocated to a redevelopment agency would not by itself preclude the fulfillment of the Legislature's other redevelopment purposes, we believe that the plain meaning of the statutes relevant to the question presented must be followed.

In summary, we conclude that when a redevelopment agency calculates the 20 percent set-aside for low- and moderate-income housing, the set-aside is based upon the total tax increment revenues allocated to the agency -- irrespective of any subsequent transfers made by the agency to other public entities.

* * * * *