[No. B186306. Second Dist., Div. Six. Jan. 18, 2007.]

RON CASTILLO et al., Plaintiffs and Appellants, v.
EXPRESS ESCROW COMPANY, Defendant and Respondent.

COUNSEL

James E. Marino for Plaintiffs and Appellants.

Michael G. Evans and Lauren J. Udden for Defendant and Respondent.

**Opinion**

**GILBERT, P. J.**—Plaintiffs agree to purchase a mobilehome. The defendant was the escrow agent for the sale. Health and Safety Code section 18035, subdivision (f), requires the escrow agent for a mobilehome sale to hold funds in escrow upon receiving written notice of a dispute between the parties to the escrow.[1] The escrow instructions provide that escrow shall close when all conditions have been met, unless the escrow company receives written demand not to complete the escrow.

Plaintiffs do not give escrow company such written demand, but while escrow is pending, plaintiffs send to escrow company a copy of their letter to seller, detailing their complaints about structural defects in the mobilehome. Escrow company closes escrow and disburses funds deposited by plaintiffs to sellers.

Plaintiffs may proceed in their action against the escrow agent because escrow company had received written notice of a dispute between plaintiffs and the seller. We therefore reverse the trial court which granted summary judgment to defendant escrow agent.

FACTS

Ron and Lavina Castillo agreed to purchase a new mobilehome from Advantage Homes (Advantage) in August of 2003. The Castillos rented a space in a mobilehome park in Santa Barbara on which the new home was to be installed. The new mobilehome was to be installed as personal property; thus, it was subject to section 18035. (See § 18035.2, subd. (b); Miller & Starr, Cal. Real Estate (3d ed.) § 31:57 [mobilehomes to be installed on foundation system not subject to § 18035].)

The parties opened escrow with Express Escrow Company (Express). The escrow instructions provided for a closing date of November 30, 2003. Paragraph I of the instructions stated in part: "If the conditions of this escrow have not been complied with prior to the date stated in Section A, or any extension thereof, you are nevertheless to complete the escrow as soon as the conditions, except as to time have been complied with, unless written demand shall have been made upon you not to complete it, in which case a dispute between the parties shall be deemed to exist and all funds designated above

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

as 'deposit' shall be held in escrow account until such time as a release is signed by the disputing parties, or pursuant to new written escrow instructions signed by the parties involved or pursuant to a final order for payment or division by a court of competent jurisdiction. . . ."

Escrow did not close on November 30, 2003. Express did not receive notice that the mobilehome had been delivered to its intended location until December 23, 2003.

By December 29, 2003, the Castillos had deposited into escrow all the funds required of them. On December 30, 2003, the Castillos' lender funded escrow with $55,000. On the same day, Express received a certificate of occupancy from the County of Santa Barbara. The certificate was on the wrong form, however. Express did not close escrow.

On February 25, 2004, Express received a copy of a letter from the Castillos' attorney to Advantage. The letter states in part:

"As you are aware, the sale and purchase agreement is not final and complete until the pending Escrow is closed . . . . In addition the escrow cannot close until the installation contractor (the contractor or subcontractor that you provided) has obtained a final inspection and obtained an installation permit and occupancy permit from the enforcing agency, the County of Santa Barbara. . . .

"Besides the structural damage done to the frame of the home as result of defective and negligent placement of the units on the lot prior to assembly, the contractor did not properly place the footings on properly prepared and tested ground capable of supporting the over 19 ton load of the home before contents are added.

"Contrary to the comments made earlier the stresses and loads on support members, including distortion of bolts, cracking, shearing and other stresses are not 'cosmetic' complaints. Your attention is directed to section 18613 subsections c. d. and e. of the California Health & Safety Code which pertain to the condition of new manufactured homes and their acceptability for occupancy and the health and safety or any one seeking to occupy an installed home. These statutes also allow the installing contractor a reasonable amount of time to correct the noted defects and obtain the required inspection and permits.

"It has now been over two (2) months since the defects were noted and they have not yet been corrected. Quite frankly a reasonable time has long since passed. The Castillos have been displaced awaiting your contractor to correct the defects (assuming they are correctable) and obtain the permits he was required to obtain in compliance with the contract and escrow instructions and also section 18613 H. & S. code *supra.*

"In as much as this failure is no fault of my clients DEMAND IS HEREBY MADE TO CORRECT THE PROBLEMS IDENTIFIED FORTHWITH including the improper footings, piers and support structures and site preparation and the other utility connections, tearing, membrane damage on the undercarriage (NOT WITH DUCT TAPE) and the shoddy wiring. This demand includes any additional damage that might occur because of slumping, sinking or slipping of the supports due to the above described improper siting and stabilization and damage[] caused by distorted frame members and connecting bolts and braces.

"In addition to making the necessary repairs and obtaining the inspection, approval and occupancy permits from the enforcing agency (County of Santa Barbara) DEMAND IS ALSO MADE TO PROVIDE THE CASTILLOS WITH SUITABLE INTERIM HOUSING ACCOMMODATIONS, damages in an amount to be assessed once the corrective work is completed, the permits obtained and the Castillos are able to live in the home. These damages will include both attorneys fees and costs and any costs and attorneys fees that may be incurred in the event litigation is necessary to remedy these violations of law, negligence and breach of the purchase contract and collateral documents."

The bottom of the letter shows that a copy of the letter was being sent to Express, among others.

On April 9, 2004, Express received a certificate of occupancy from the county on the proper form. It closed escrow and disbursed all the funds. A month after the close of escrow, Express received a demand from the Castillos' attorney not to close escrow.

The Castillos never accepted the mobilehome. Instead, they brought this action against Express and others for breach of contract, unfair business practices and conversion. The Castillos moved for summary judgment against Express on the ground that section 18035, subdivision (f), requires an escrow agent upon being notified in writing of a dispute to hold in escrow all funds denoted as a deposit. The trial court denied the motion.

Thereafter, Express made its own motion for summary judgment, which the trial court granted. In granting the motion, the trial court stated the Castillos have arguably produced evidence that shows a dispute arose, and that Express was notified in writing by a copy of their attorney's February 23, 2004, letter. The court nevertheless relied on paragraph I of the escrow instructions. It interpreted paragraph I as requiring Express to close escrow when all conditions are fulfilled unless written demand is made not to complete the escrow. The court concluded that all conditions of escrow were fulfilled, and that the escrow agent received no demand not to complete escrow prior to closing.

The trial court awarded Express over $13,000 in attorney's fees and costs.

## DISCUSSION

### I

Summary judgment is properly granted only if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The court must draw all reasonable inferences from the evidence set forth in the papers except where such inferences are contradicted by other inferences or evidence which raise a triable issue of fact. (*Ibid.*) In examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

The moving party has the initial burden of showing that one or more elements of a cause of action cannot be established. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) Where the moving party has carried that burden, the burden shifts to the opposing party to show a triable issue of material fact. (*Ibid.*) Our review of the trial court's grant of the motion is de novo. (*Id.* at p. 767.)

### II

Section 18035, subdivision (f), provides: "In the event any dispute arises between the parties to the escrow and upon notification in writing to the escrow agent, unless otherwise specified in the escrow instructions, all funds denoted as deposit shall be held in escrow until a release is signed by the disputing party, or pursuant to new written escrow instructions signed by the parties involved, or pursuant to a final order for payment or division by a

court of competent jurisdiction. Any other funds, other than escrow fees, shall be returned to the buyer or any person, other than the dealer or seller, as appropriate."

Subdivision (k) of section 18035 provides: "No agreement shall contain any provision by which the buyer waives his or her rights under this section, and any waiver shall be deemed contrary to public policy and shall be void and unenforceable."

The Castillos contend the trial court erred in concluding that paragraph I of the escrow instructions superseded or altered their rights under section 18035, subdivision (f). They believe the trial court improperly focused on the phrase "unless otherwise specified in the escrow instructions" contained in section 18035, subdivision (f), in so concluding. They urge that the phrase must be interpreted in light of the prohibition on waiver contained in section 18035, subdivision (k). They believe the phrase must be limited to escrow instructions that arise out of a postdispute settlement.

Express states it has never argued that section 18035, subdivision (f), was "evaded" or "altered" by the escrow instructions. Indeed, paragraph I of the escrow instructions simply recognizes that escrow closings are frequently delayed for reasons that have nothing to do with a dispute between the parties. The paragraph allows escrow to assume there is no dispute unless it is notified in writing not to close escrow. The paragraph does not state that an express demand not to close escrow is the only way to prevent closing. Nor does it otherwise attempt to abrogate the Castillos' rights under section 18035, subdivision (f). The Castillos' rights under section 18035, subdivision (f), are in addition to those contained in the escrow instructions.

Here the Castillos' attorney's letter of February 2004 should have alerted any reasonable person that there was a substantial dispute between the parties to the escrow. It is uncontested that the Castillos sent and Express received a copy of the letter prior to closing escrow.

If a statute's language is clear, the plain meaning of the language governs. (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 8 [255 Cal.Rptr. 412, 767 P.2d 679].) Contrary to Express's arguments, there is nothing in the language of section 18035, subdivision (f), that requires the written notice of dispute to cite the code section, or to be in any particular form, or that the notice be addressed directly to the escrow holder, or that the notice contain an express request not to close escrow. The subdivision requires nothing more than that the escrow agent receive notice in writing of a dispute between the parties.

Express argues the February 2004 letter was at best vague and ambiguous. But it explicitly notified Express of a dispute between the parties to the

escrow. If Express had any questions, it could have contacted the Castillos' attorney for clarification. There is no evidence it attempted to do so.

Express argues it was obligated to close escrow because all the conditions of the escrow instructions were fulfilled. The form escrow instructions Express used contain no provision for the purchaser's approval of the condition of the mobilehome. But all laws in existence when the agreement was made become part of the contract. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 752, p. 842.) Thus Express, having received notice of the dispute, could not deem all conditions of the escrow satisfied.

Express emphasizes the county's issuance of a certificate of occupancy. But the county's issuance of a certificate of occupancy does not mean that the dispute has been resolved. The certificate simply reflects the opinion of a county official that the mobilehome contains no substantial defects in materials and workmanship. (See § 18613, subds. (c) & (d).) Express cites no authority that the purchasers are bound by that opinion.

Express argues the Castillos' conduct and failures to act or communicate with Express show the February 2004 letter was not a section 18035, subdivision (f), notice of dispute. Express points out the letter alleges that over two months have passed but the defects are still not corrected. During those two months, Express received amended escrow instructions and a delivery notification signed by the Castillos. Express sent to the Castillos an estimated closing statement and a receipt for the balance due.

Express's point appears to be that the Castillos were acting as though they expected escrow to close. Assuming that to be true, there is nothing inconsistent between section 18035, subdivision (f), and the expectation that escrow would eventually close. Upon receiving written notification of a dispute, the subdivision requires the escrow agent to hold all funds denoted as a deposit in escrow, and to return all other funds less escrow fees. That does not prevent escrow from eventually closing, should the parties resolve their dispute. All the necessary funds may be redeposited into escrow. In fact, section 18035, subdivision (f), expressly recognizes that the parties may continue with the escrow by providing new written escrow instructions to the escrow agent.

Express argues that the Castillos did not attempt to communicate with it prior to the close of escrow. But the Castillos notified Express of a dispute by sending it a copy of the February 2004 letter. That is all the notification section 18035, subdivision (f), requires.

Express argues that the Castillos did not promptly communicate with it after escrow closed. It points out it did not receive a letter from the Castillos'

attorney demanding the escrow funds be interpleaded until almost a month after the close of escrow. But the letter requesting interpleader is evidence tending to show the Castillos did not realize escrow had closed. Not everyone realizes the significance of a closing statement and a $70 refund check, particularly after having notified escrow of a dispute. Moreover, once escrow closed further notification became meaningless.

Finally, Express argues the Castillos' conduct before and after close of escrow constitutes waiver and estoppel as to any claim that the February 2004 letter was notice under section 18035, subdivision (f). But as we have stated, nothing the Castillos' did prior to the close of escrow is inconsistent with such notice, and nothing they did after close of escrow could have made a difference.

III

Express contends the Castillos waived their right to appeal by failing to oppose its motion for summary judgment.

The Castillos opposed Express's motion for summary judgment by requesting that the trial court take judicial notice of "documents, papers, pleadings and exhibits" submitted in support of their own prior unsuccessful motion for summary judgment. The trial court granted the Castillos' request for judicial notice of "documents filed in connection with their motion for summary judgment . . . ." Although the trial court granted Express's motion for summary judgment, its ruling was not based on any procedural inadequacy of the Castillos' opposition. The Castillos did not waive their right to appeal by failing to oppose the motion.

Express argues the trial court took judicial notice only of the Castillos' attorney's letter of February 2004. If so, that is enough. Express's concession that it received a copy of the letter prior to closing escrow, alone demonstrates the trial court erred in granting Express's motion for summary judgment.

Express contends the Castillos' opening brief is not sufficient to sustain the appeal. The opening brief is adequate for this appeal; it need not be a model for appellate practice.

Finally, Express argues that the judgment as to the Castillos' causes of action for unfair business practices and conversion must be affirmed for failure to raise any issues concerning those causes of action on appeal. The Castillos do not contest the argument. The Castillos have waived their appeal as to those two causes of action.

The judgment, including the award of attorney's fees and costs, is reversed and the matter remanded for further proceedings consistent with this opinion. Costs are awarded to appellants.

Yegan, J., and Coffee, J., concurred.