Filed 11/12/21  Villanueva v. Fidelity National Title CA6
Opinion on remand from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANNY VILLANUEVA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> FIDELITY NATIONAL TITLE COMPANY, <br><br> Defendant and Appellant. | H041870, H042504 <br> (Santa Clara County <br> Super. Ct. No. 1-10-CV173356) |

The Insurance Code includes provisions regulating the business of title insurance in California.  Among other things, the Insurance Code requires all title insurers to file a schedule of their rates with the Insurance Commissioner.  (Ins. Code, § 12401.1.)[1]  In the context of title insurance, a "rate" is the charge made to the public by a title insurer or title company for title insurance services.  (§ 12340.7.)  The Insurance Code generally prohibits title insurers and title companies from charging rates that have not been filed with the Insurance Commissioner.  (§§ 12401.1, 12340.7, 12414.27.)

In this case, plaintiff Manny Villanueva alleged in his complaint against defendant Fidelity National Title Company (Fidelity) that Fidelity had unlawfully charged Villanueva and his wife, Sonia Villanueva,[2] unfiled rates for certain escrow services

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

[2] We shall refer to Manny Villanueva using the singular "Villanueva," to Sonia Villanueva by her first name, and to Manny and Sonia Villanueva jointly as "the Villanuevas."

when Fidelity handled the escrow for the refinancing of their home mortgage. The trial court granted Villanueva's motion to certify a class of similarly situated consumers. By the time of the court trial in this matter, the only cause of action remaining for trial was violation of the unfair competition law (UCL), Business and Professions Code section 17200 et seq.

In a combined statement of decision and judgment, the trial court ruled that Fidelity did not have statutory immunity under section 12414.26. The court also ruled that Fidelity had violated the UCL by unlawfully charging unfiled rates for certain title services, including delivery by third party vendors. As to the remedies for Fidelity's UCL violation, the trial court determined that the class was not entitled to restitution because Villanueva did not suffer an economic injury due to Fidelity's violation of the UCL. However, the trial court granted injunctive relief, enjoining "Fidelity from charging for the service of delivery unless its rate filing includes the charge or a statement that the rate will be the amount charged by the third party vendors for delivery fees." Plaintiffs' motion for attorney's fees pursuant to Code of Civil Procedure section 1021.5 was denied.

On appeal, Villanueva, individually and as class representative (collectively plaintiffs), argued in case No. H041870 that the trial court had erred in failing to award restitution under the UCL and by granting judgment on the pleadings on their breach of fiduciary duty claim. In case No. H042504, plaintiffs contended that the trial court erred in denying their postjudgment motion for attorney's fees under Code of Civil Procedure section 1021.5.[3]

Fidelity cross-appealed, contending that the judgment should be reversed because (1) Fidelity was immune from suit under section 12414.27; (2) Villanueva lacked standing as the named class representative because he was not the borrower;

---

[3] On this court's own motion, the appeals in case Nos. H042504 and H041870 were considered together for purposes of briefing, oral argument, and decision.

2

(3) alternatively, the Insurance Code did not require Fidelity to file a rate for delivery services provided by a third party vendor or for excess charges; and (4) the trial court erred in granting injunctive relief for past acts unlikely to be repeated.

In *Villanueva v. Fidelity National Title Co.* (2018) 26 Cal.App.5th 1092 (*Villanueva I*), this court reversed the judgment, holding that "this civil action is barred by the immunity in section 12414.26 and is subject to the exclusive original jurisdiction of the Insurance Commissioner because it challenges Fidelity's ratemaking-related activity." (*Id*. at p. 1099.)

The California Supreme Court granted review of *Villanueva I*. In *Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104 (*Villanueva II*), the Supreme Court held that "[t]he statutory immunity for 'act[s] done . . . pursuant to the authority conferred' ([§] 12414.26) by the rate-filing statutes does not shield title insurers from suit for charging unauthorized rates, and the Insurance Commissioner does not have exclusive jurisdiction over such claims." (*Id*. at pp. 110-111.)

Our Supreme Court further determined in *Villanueva II* that "[t]he Insurance Code required Fidelity to file its rates with the Insurance Commissioner before charging consumers, but it failed to do so. Charging an unfiled rate is not an 'act done . . . pursuant to the authority conferred by' [s]ection 12401 et seq. (§ 12414.26). It is a violation of the express terms of the Insurance Code, for which Fidelity enjoys no statutory immunity from suit under section 12414.26. Nor does any aspect of other provisions in the chapter regulating title insurance grant to the Commissioner exclusive jurisdiction to address consumer challenges to unfiled rates. [S]ection 12414.13 supplies an administrative remedy, but it is not exclusive of other remedies otherwise available in the courts. The superior court therefore did not err in ruling on the merits of Villanueva's UCL action challenging the imposition of unfiled rates. [Citations.]. [¶] We reverse the Court of Appeal's judgment and remand for further proceedings not inconsistent with this opinion." (*Id*. at pp. 133-134.)

3

In conformity with the Supreme Court's holdings in this case and its remand to this court for further proceedings (*Villanueva II*, *supra*, 11 Cal.5th at p. 134), we now issue a new decision evaluating the issues raised on appeal that the Supreme Court did not address in its decision.[4]

For the reasons stated below, we determine in case No. H041870 as a threshold matter that Villanueva lacks standing, either as an individual or a class representative, to bring a UCL claim because he failed to show that he " 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' ([Bus. & Prof. Code,] § 17204.)" (See *Mayron v. Google LLC* (2020) 54 Cal.App.5th 566, 574 (*Mayron*).) We also determine that the trial court did not err in granting judgment on the pleadings with respect to Villanueva's cause of action for breach of fiduciary duty. We will therefore reverse the judgment and direct the trial court to vacate the order granting injunctive relief and to enter a judgment of dismissal. In case No. H042504, we will affirm the order denying plaintiffs' postjudgment motion for attorney's fees under Code of Civil Procedure section 1021.5.

---

[4] Following the Supreme Court's remand in *Villanueva II*, the parties filed supplemental briefs pursuant to California Rules of Court, rule 8.200(b). Fidelity's motion to strike or partially strike Villanueva's supplemental responding brief is denied. Fidelity's motion for judicial notice of a document described as the "April 13, 2020 Press Release From California Department of Insurance, entitled *Commissioner Lara Orders Insurance Companies to Refund Premiums to Drivers and Businesses Affected by the COVID-19 Emergency*" is also denied. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citations.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

4

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Refinance Transaction and Fidelity's Escrow Services*

Fidelity provided escrow services when the Villanuevas refinanced the mortgage on their home in Santa Clara County.[5]  Sonia Villanueva, who is not a party to this action, was the sole borrower on the mortgage.  The refinance transaction included obtaining a new loan, paying off first and second mortgages, and a cash payment to the Villanuevas.

The fees charged by Fidelity for its escrow services included a base rate of $250 plus, among other fees, the additional fees that are at issue in this litigation:  a document preparation fee ($75); a "draw deed" fee (a fee for preparing a deed) ($50); an overnight delivery fee ($11.20); and a courier fee ($15).[6]  In their escrow instructions, the Villanuevas authorized Fidelity to charge certain fees, including "Federal Express, special mail handling/courier and/or incoming/outgoing wire transfer fees" and fees for a "select special mail/delivery or courier service to be used."

During escrow, Fidelity arranged for three deliveries to be made, including (1) overnight mail by California Overnight from Fidelity to the holder of the first mortgage, First Federal Bank; (2) overnight mail by Federal Express (FedEx) from Fidelity to the holder of the second mortgage, Chase Home Finance; and (3) a delivery by First Courier from Fidelity to the mortgage broker at the close of escrow.  Escrow closed on May 31, 2006.

### B.  *The Class Action Complaint*

After escrow closed, Villanueva filed a class action complaint alleging that Fidelity had engaged in unlawful conduct by charging him and others fees for delivery, courier, and draw deed services that were not listed on Fidelity's rate filings with the

---

[5] We have taken some of the factual and procedural background from our prior opinion, *Villanueva I.*

[6] Fidelity gave the Villanuevas a $20 discount on escrow fees pursuant to the terms of a 2002 stipulated judgment in *People v. Fidelity National Title Insurance Co.* (Super. Ct., Sac. County 1999, No. 99AS02793.)  The discount is not at issue on appeal.

Insurance Commissioner.  The trial court certified a class of " '[a]ll persons for whom [Fidelity] performed residential escrow services in a transaction that occurred in California, and who were charged for courier, overnight, messenger, or other delivery services and/or draw deed fees in connection with that transaction, during the period May 28, 2006 through September 30, 2012.' "

The original complaint included causes of action for violations of the UCL (Bus. & Prof. Code, § 17200 et seq.), fraud, negligent misrepresentation, negligence, unjust enrichment, money had and received, and breach of fiduciary duty.  The named defendants included Fidelity (the escrow company), Fidelity National Title Insurance Company (the title insurer), and Fidelity National Title Company of California.  Villanueva subsequently dismissed the action without prejudice as to all defendants except Fidelity.

## C.    The Court Trial

The class action then proceeded to a court trial.  By that time, all causes of action except the cause of action for violation of the UCL (Bus. & Prof. Code, § 17200 et seq.) had been eliminated through motion practice.  At trial, plaintiffs asserted two alternate theories of liability under the UCL, "Delivery Theory No.1" and "Delivery Theory No.2," which were based on the allegedly unlawful charges for delivery services.

In "Delivery Theory No.1" (also known as the unfiled rate claim), plaintiffs argued that section 12401.7[7] prohibited Fidelity from charging the class third party delivery fees because Fidelity had not filed delivery fee rates with the Insurance Commissioner.  Alternatively, in "Delivery Theory No.2," plaintiffs argued that Fidelity

_____

[7] Section 12401.7 states:  "No title insurer, underwritten title company or controlled escrow company shall use any rate in the business of title insurance prior to its effective date nor prior to the filing with respect to such rate having been publicly displayed and made readily available to the public for a period of no less than 30 days in each office of the title insurer, underwritten title company, or controlled escrow company in the county to which such rate applies, and no rate increase shall apply to title policies or services which have been contracted for prior to such effective date."

6

had unlawfully charged double delivery fees by including those fees in its base rate for its escrow services and additionally as separate fees for delivery.

A third theory of liability, the "Draw Deed Theory," concerned plaintiffs' claims that Fidelity had unlawfully charged a "draw deed" fee where its filed rate was for "document preparation." A subset of the class, known as the "Gap Period Plaintiffs," claimed that Fidelity had not filed rates for document preparation for sales (as opposed to refinance) transactions for close to two years.

As remedies, plaintiffs sought injunctive relief and restitution of approximately $13.1 million for the unlawful third party delivery fees and approximately $10.7 million for the unlawful draw deed fees. Additionally, the Gap Period Plaintiffs sought $1.8 million in restitution for draw deed fees on their theory of liability.

### D. Statement of Decision and Judgment

The trial court issued a final statement of decision and judgment on November 10, 2014, which included the court's rulings regarding the alleged violations of the UCL, statutory immunity, and remedies.

#### 1. Violation of the UCL

Regarding Delivery Theory No. 1, the trial court found "that Fidelity violated the law by charging for the service of delivery because the rate filings did not include a charge for the service of delivery." The court rejected Fidelity's contention that it was not required to file a rate for fees charged for delivery by third party vendors, such as an overnight delivery company, based on a plain language interpretation of section 12414.27[8] and the Insurance Commissioner's similar interpretation that rate filings are required for fees charged for delivery by third party vendors. The court did

---

[8] Section 12414.27 provides in part: "[N]o title insurer, underwritten title company or controlled escrow company shall charge for any title policy or service in connection with the business of title insurance, except in accordance with rate filings which have become effective pursuant to Article 5.5 (commencing with [s]ection 12401) of this chapter or as otherwise authorized by such article[.]"

7

not reach the merits of alternative Delivery Theory No.2 in light of the court's ruling on Delivery Theory No.1.

As to the Draw Deed Theory, the trial court found that (1) during the "Gap Period," "[f]rom May 28, 2006 until February 2, 2008, Fidelity's rate filings for sale/resale transactions (as contrasted with refinance transactions) did not include a rate for either the service of drawing a deed or document preparation;" and (2) outside the Gap Period, "Fidelity did not violate the law by charging for the service of drawing a deed" since Fidelity's rate filings included a rate for document preparation.

### 2. Statutory Immunity

Having ruled that Fidelity violated the UCL by charging unfiled rates for delivery services in violation of section 12414.27, the trial court further ruled that Fidelity was not entitled to statutory immunity under section 12414.26.[9] The court reasoned that "[s]ection 12414.26 confers immunity for an 'act done, action taken, or agreement made pursuant to the authority conferred by Article 5.5 . . .' Section 12414.26 does not apply because Article 5.5 did not authorize the unlawful charges. Nothing in Article 5.5 authorizes the charging for a service other than in accordance with rate filings. No evidence at trial persuades the Court to depart from this conclusion reached when it denied Fidelity's motion for nonsuit."

### 3. Remedies

#### a. Restitution

The trial court determined for several reasons that restitution was not an appropriate equitable remedy under the facts of this case, even though plaintiffs had established that Fidelity violated the UCL.

---

[9] Section 12414.26 states: "No act done, action taken, or agreement made pursuant to the authority conferred by Article 5.5 (commencing with [s]ection 12401) or Article 5.7 (commencing with [s]ection 12402) of this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this state heretofore or hereafter enacted which does not specifically refer to insurance."

First, the trial court found that plaintiffs had "received the benefit of their bargain," since they did not "contend the delivery and draw deed services were unwanted, unsatisfactory, or unfairly priced, and all of these services and rates were disclosed up-front and agreed to by Plaintiffs."

Second, the court found that "Plaintiffs failed to show that alleged omissions in Fidelity's filed rates caused any injury," since plaintiffs' payments and the escrow services provided would have been the same even if the rates for delivery and draw deed services had been properly filed with the Insurance Commissioner.

Finally, the trial court found that ordering restitution would put plaintiffs in a better position than expected under the circumstances of this case, where "the class members benefited from the low delivery fees negotiated by Fidelity and as demonstrated by the Villanueva transaction, the fees were disclosed and approved in the estimated closing statement, which was part of the escrow instructions."

### b. Injunctive Relief

The trial court granted injunctive relief, as follows: "[T]he Court finds it appropriate to enjoin Fidelity from charging for the service of delivery unless its rate filing includes the charge or a statement that the rate will be the amount charged by the third party vendor for delivery fees."

The trial court based its decision to grant injunctive relief on several factors, including (1) although Fidelity's recent rate filings included a charge for delivery service, the court found that the inclusion was a tactical decision made in anticipation of trial; (2) Fidelity had known since 1999 that the position of the California Department of Insurance (CDI) was that charges for delivery service must be included in the rate filings in order to be charged; (3) absent an injunction, there was nothing to prevent Fidelity from returning to its past practices, which included filing rates for delivery fees and then withdrawing them; and (4) Fidelity continued to take the position that the Insurance Code did not require filing rates for delivery services by third party vendors.

9

## II.     DISCUSSION:  Case No. H041870

On appeal in case No. H041870, plaintiffs argue the trial court erred by failing to award restitution under the UCL and by granting judgment on the pleadings on their breach of fiduciary duty cause of action.

Fidelity cross-appeals, contending that the judgment should be reversed because (1) Fidelity was immune from suit under section 12414.27; (2) Villanueva lacked standing as the named class representative because he was not the borrower; (3) alternatively, section 12414.27 did not require Fidelity to file a rate for delivery services provided by a third party vendor; (4) section 12401.8 did not require rate filing for draw deed and delivery services for the Gap Period Plaintiffs since those were excess charges; and (5) the trial court erred in granting injunctive relief for past acts unlikely to be repeated.

We will begin our evaluation of the issues on appeal with Fidelity's cross-appeal because the cross-appeal raises issues of liability under the UCL, including the threshold issue of whether Villanueva lacks standing, either individually or as class representative, to pursue claims under the UCL against Fidelity.

### A.     *Fidelity's Cross-Appeal:  UCL Cause of Action*

On appeal, Fidelity argues that Villanueva lacks standing to bring an action under the UCL because he was not the borrower on the refinance loan, and therefore he could not challenge the fees charged by Fidelity that were paid by the actual borrower, his wife Sonia Villanueva.   For that reason, Fidelity contends that the judgment is void for lack of subject matter jurisdiction.

The trial court did not expressly rule on the issue of Villanueva's standing under the UCL in the court's statement of decision.  Having reviewed the record on appeal, we observe that the trial court made an express finding in denying restitution that "Plaintiffs failed to show that alleged omissions in Fidelity's filed rates caused any injury," since plaintiffs' payments and the escrow services provided would have been the same even if

10

the rates for delivery and draw deed services had been properly filed with the Insurance Commissioner.  In light of that finding, we requested supplemental briefing addressing the issue of whether the court lacks subject matter jurisdiction because Villanueva does not have standing to bring a claim under the UCL (Bus. & Prof. Code, §§ 17203, 17204) as either an individual or as class representative.

In their supplemental briefing, we asked the parties to include a discussion of (1) whether the issue of standing under the UCL may be raised for the first time on appeal; (2) the applicable standard of review; and (3) whether Villanueva meets the requirements for standing under the UCL as set forth by the California Supreme Court in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 (*Kwikset*).[10]  Both parties submitted supplemental briefing.

We will begin our evaluation with an overview of the requirements for standing under the UCL.

### 1. *Standing under the UCL*

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'  ([Bus. & Prof. Code,] § 17200.)  Its purpose 'is to protect both consumers and competitors by promoting

---

[10] "It is elementary that a plaintiff who lacks standing cannot state a valid cause of action; therefore, a contention based on a plaintiff's lack of standing . . . may be raised at any time in the proceeding."  (*McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90; see also *Common Cause v. Bd. of Supervisors* (1989) 49 Cal.3d 432, 438 ["contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding"].)  We therefore have authority to consider the issue of whether Villanueva lacks standing under the standard set forth in *Kwikset* for the first time on appeal.  Villanueva contends in his supplemental briefing letter that consideration of the standing issue is barred under California Rules of Court, rule 8.200(b)(2), which permits either party to submit a supplemental brief following remand by the California Supreme Court "limited to matters arising after the previous Court of Appeal decision," but that rule does not preclude us from requesting supplemental briefing with regard to an issue of subject matter jurisdiction.

fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset, supra*, 51 Cal.4th at p. 320.)

"The unfair competition statutes come with an express standing requirement, however.  An action can be brought only 'by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.' ([Bus. & Prof. Code,] § 17204.)" (*Mayron, supra*, 54 Cal.App.5th at p. 574.)  Our Supreme Court clarified in *Kwikset, supra*, 51 Cal.4th at page 322 that standing under the UCL requires a party to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  Further, "[b]ecause the lost money or property requirement is more difficult to satisfy than that of injury in fact, for courts to first consider whether lost money or property has been sufficiently alleged or proven will often make sense.  If it has not been, standing is absent and the inquiry is complete." (*Id*. at p. 325.)

"We review any factual determinations that bear upon the standing issue under the substantial evidence standard.  [Citation.]" (*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1092 (*Daro*); see also *San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73 [where the superior court makes underlying factual findings relevant to the question of standing, we review the findings for substantial evidence].)  "The appellant has the burden of demonstrating that 'there is no substantial evidence to support the challenged findings.' [Citation.]" (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1264 (*Manson*).)

### 2.    *The Trial Court's Factual Findings*

The trial court made a number of factual findings in the statement of decision that are relevant to the issue of Villanueva's standing to bring an action under the UCL, as follows.  "First, even if an unlawful act occurred during the transaction, Plaintiffs received the benefit of their bargain.  [Citations.]  Plaintiffs do not contend the delivery

12

and draw deed services were unwanted, unsatisfactory, or unfairly priced, and all of these services and rates were disclosed up-front and agreed to by Plaintiffs. [Citations.] [¶] The record in this case shows that the Villanuevas authorized and instructed that the payoff check could be delivered by Fed Ex; that third-party vendors delivered [Villanueva's] payoff check on his prior home loan and delivered closing documents and a mortgage broker fee pursuant to the escrow instructions; that Mr. Villanueva admits he was told a deed was required for his transaction and he expected Fidelity to prepare a deed; that Mr. Villanueva does not contend the delivery services or deed preparation services for his transaction were unsatisfactory; that draw deed and delivery fees were disclosed and approved by the Villanuevas in the estimated closing statement, which was part of the escrow instructions; and that Mr. Villanueva admitted he benefited from Fidelity's service of preparing a deed for his transaction. The Villanuevas paid the same amounts for deed preparation that they would have paid (a) had the HUD-1s stated the verbatim filed rate language 'document preparation $75' or (b) had the filed rate stated 'document preparation (e.g., deeds) $75' or 'draw deed $75.' [¶] Class members benefited from the low delivery fees charged by third party vendors for their services. For example, for the Villanueva FedEx delivery, Fed Ex's retail rate was $20.75, its rate for Fidelity escrow customers was a low $11.50, and other escrow holders would have charged at least $15 or $20. Other comparisons show customers paid more for overnight deliveries in transactions with other title companies than in a Fidelity transaction. Furthermore, class members benefited from paying third party vendors to perform overnight deliveries of payoff checks for them because they cut off accruing interest more quickly than with regular mail and the savings typically exceeded the cost of the delivery." (Fns. omitted.) Based on these findings, the trial court concluded that "Plaintiffs failed to show that alleged omissions in Fidelity's filed rates caused any injury," since plaintiffs' payments and the escrow services provided would have been the

same even if the rates for delivery and draw deed services had been properly filed with the Insurance Commissioner.

The trial court further found that "[s]econd, Plaintiffs failed to show that alleged omissions in Fidelity's filed rates caused any injury. [Citations.] The Villanuevas did not review any of Fidelity's filed rate manuals prior to closing or before this action and, thus, did not rely upon or form any expectations based on those manuals. . . . There is no causation here where Plaintiffs never reviewed the filed rates, upfront disclosure broke any 'causal chain,' and Plaintiffs would be in the same position whether or not Fidelity included Plaintiffs' desired language in its rate manuals. [Citations.] Indeed, when Fidelity amended its rate filings to address Plaintiffs' critiques, the impact on consumers was zero. Thus, even under Plaintiffs' view of a 'compliant' rate manual, Plaintiffs' payments and the services provided would be the same such that there can be no causation." (Fns. omitted.)

### 3. *Analysis*

In its supplemental letter brief, Fidelity contends that the trial court's "factual determination that Plaintiffs experienced no economic loss resulting from the statutory violation means they lack UCL standing to seek **any** UCL remedy—either restitution or injunctive relief." As we will discuss, we agree.

Villanueva argues in his supplemental letter brief that Fidelity admitted in its briefing on appeal, and the California Supreme Court established in *Villanueva II*, that he paid "illegal overcharges" because Fidelity charged unfiled rates for delivery and document preparation services. According to Villanueva, he therefore lost money and suffered an economic loss sufficient for UCL standing under *Kwikset*, *supra*, 51 Cal.4th at page 322.

We are not convinced by Villanueva's arguments. To begin with, we do not read Fidelity's briefing on appeal to include an admission that Villanueva paid "illegal overcharges." We also do not read the California Supreme Court's decision in

14

*Villanueva II* to establish that Villanueva paid "illegal overcharges." In *Villanueva II*, our Supreme Court ruled that "[t]he statutory immunity for 'act[s] done . . . pursuant to the authority conferred' ([§] 12414.26) by the rate-filing statutes does not shield title insurers from suit for charging unauthorized rates, and the Insurance Commissioner does not have exclusive jurisdiction over such claims." (*Villanueva II*, *supra*, 11 Cal.5th pp. 110-111.) The issue of standing was not addressed in *Villanueva II*. " 'It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court.' [Citation.]" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 332.)

Moreover, to the extent Villanueva contends that he has standing because the trial court found that Fidelity charged unfiled rates for delivery and document preparation services in violation of the Insurance Code, we are not convinced. Several appellate court decisions are instructive in determining whether a person has standing to bring an action under the UCL where, as here, it is alleged or shown that the basis for the UCL claim is the defendant's statutory violation. (See *Daro*, *supra*, 151 Cal.App.4th at p. 1093 ["the UCL 'borrows' violations of other laws and makes them independently actionable as unfair competitive practices"].)

In *Mayron*, this court considered whether the plaintiff's allegation of a statutory violation was sufficient to show that he had standing to bring a UCL action against Google. (*Mayron*, *supra*, 54 Cal.App.5th at p. 570.) The plaintiff alleged that Google had violated the automatic renewal law (Bus. & Prof. Code, § 17600 et seq.) "because Google did not provide the required clear and conspicuous disclosures nor obtain his affirmative consent to commence a recurring monthly subscription agreement, and did not adequately explain how to cancel." (*Mayron*, *supra*, at p. 570.) These allegations were insufficient to survive a demurrer because the plaintiff failed to allege that, if Google had complied with the automatic renewal law, he would not have ordered the increased data storage under the monthly subscription plan or he would have canceled the additional storage. (*Id*. at p. 574.) In short, "[l]ack of a causal link between the

15

underlying statutory violation and the nature of the plaintiff's loss precludes standing under [Business and Professions Code] section 17200." (*Id.* at p. 576.)

In *Medina v. Safe-Guard Products* (2008) 164 Cal.App.4th 105, 108 (*Medina*), the plaintiff brought a UCL action alleging that he had purchased a vehicle service contract from a company not licensed to sell insurance in California in violation of section 700. The defendant insurer's demurrer was sustained on the ground that the plaintiff had not alleged facts sufficient for standing under the UCL because the plaintiff failed to allege "that he didn't want wheel and tire coverage in the first place, or that he was given unsatisfactory service or has had a claim denied, or that he paid more for the coverage than what it was worth because of the unlicensed status of Safe-Guard.  He hasn't suffered any loss *because* of Safe-Guard's unlicensed status."  (*Medina*, *supra*, at p. 114; see also *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1591 [no economic injury alleged where the plaintiffs obtained bargained-for cell phone insurance at the bargained-for price from an unlicensed insurer].)

Similarly, in *Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545 (*Bower*), the plaintiff alleged that defendant AT&T had violated a state tax regulation (Cal. Code Regs., tit. 18, § 1585, subd. (b)(3)) by misrepresenting "that it was required to pass on to her the sales tax on the unbundled price of the cellular telephone that she purchased when such pass-through is merely discretionary."  (*Bower*, *supra*, at p. 1550.) These allegations were deemed insufficient for standing under the UCL because the plaintiff had failed to allege injury in fact, since the plaintiff "did not allege that she could have obtained a bundled transaction for a new cellular telephone—the telephone that she selected—at a lower price from another source." (*Id.* at p. 1555.)

We reach a similar conclusion in the present case.  Here, the trial court expressly found that Fidelity's charging of unfiled rates for escrow services did not cause plaintiffs any injury, since plaintiffs' payments and the escrow services provided would have been the same even if the rates for delivery and draw deed services had been properly filed

16

with the Insurance Commissioner. The trial court also expressly found that "Plaintiffs do not contend the delivery and draw deed services were unwanted, unsatisfactory, or unfairly priced, and all of these services and rates were disclosed up-front and agreed to by Plaintiffs. [Citations.]" The trial court's factual findings therefore show that Villanueva lacks standing to bring an action under the UCL, since, as this court has stated, "[a]n action can be brought only 'by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.' ([Bus. & Prof. Code,] § 17204.)" (*Mayron*, *supra*, 54 Cal.App.5th at p. 574; *Kwikset*, *supra*, 51 Cal.4th at p. 325 [standing absent where the plaintiff has not proven economic injury caused by the unfair business practice].)

Villanueva does not contend that the trial court's findings—that he did not suffer an injury in fact as the result of Fidelity charging unlawful escrow fees in violation of the Insurance Code—are not supported by substantial evidence. Instead, Villanueva repeatedly argues, without citation to any evidence, that he has standing because, even if he was not the borrower, he paid illegal overcharges during the refinance transaction and the payment of illegal overcharges is sufficient to confer standing under the UCL. This argument lacks merit in light of the trial court's implicit finding of no overcharge, since the court expressly found that plaintiffs' payments and the escrow services provided would have been the same even if the rates for delivery and draw deed services had been properly filed with the Insurance Commissioner. Accordingly, Villanueva has not met his burden on appeal to show the trial court's findings are not supported by substantial evidence. (See *Manson*, *supra*, 188 Cal.App.4th at p. 1264.)

Villanueva's reliance on the California Supreme Court's decision in *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758 is misplaced, since that decision is distinguishable. In *Clayworth*, our Supreme Court determined that the plaintiff pharmacies had standing because they "paid more than they otherwise would have because of a price-fixing conspiracy in violation of state law." (*Id*. at p. 788.) In contrast, as we have discussed,

17

the trial court expressly found that plaintiffs' payments to Fidelity and the escrow services provided would have been the same even if the rates for delivery and draw deed services had been properly filed with the Insurance Commissioner.

Villanueva also relies on several decisions of the federal district courts applying California law that he contends "agree that payment of any unlawful fee or illegal charge automatically confers standing under the UCL." However, the decisions of the lower federal courts are not binding on this court, and although the decisions of the federal appellate courts may be persuasive, we do not find them persuasive where the decisions are contrary to California Supreme Court authority and California statutes. (See *In re Bettencourt* (2007) 156 Cal.App.4th 780, 801.)

For these reasons, we conclude that Villanueva lacks standing, either as an individual or in a representative capacity, to bring an action under the UCL seeking the remedies of restitution and injunctive relief. Accordingly, we determine that the trial court did not err in denying restitution, and we will direct the trial court to vacate its order granting Villanueva injunctive relief. (See *Kwikset*, *supra*, 51 Cal.4th at p. 337 [the availability of an injunction depends on standing to sue under the UCL].) Having reached this conclusion, we need not address the remaining issues raised in the parties' briefing on appeal.

### B.   *Plaintiffs' Appeal:  Breach of Fiduciary Duty Cause of Action*

Plaintiffs contend that the trial court erred in granting Fidelity's motion for judgment on the pleadings on their cause of action for breach of fiduciary duty.

#### 1.   *Background*

In their first amended complaint, plaintiffs alleged in the cause of action for breach of fiduciary duty that "[a]s the escrow agent Fidelity had a fiduciary duty to plaintiff and the escrow class.  [¶] . . . Fidelity breached that fiduciary duty by charging fees that were not allowed under its filed rates.  [¶] . . . As a result of that breach, plaintiff and the escrow class were damaged in an amount to be proven at trial."

18

Fidelity moved for judgment on the pleadings, contending that plaintiffs could not state a cause of action for breach of fiduciary duty that was based upon violations of the Insurance Code for which no private right of action exists. Plaintiffs opposed the motion, arguing that they had stated a valid cause of action for breach of fiduciary duty by alleging that Fidelity had breached its fiduciary duty as an escrow agent "by charging fees that were not allowed under its filed rates." The trial court agreed with Fidelity that no private right of action exists for the alleged violations of the Insurance Code, and granted the motion for judgment on the pleadings with leave to amend. The record reflects that plaintiffs elected not to amend their cause of action for breach of fiduciary duty.

### 2. The Parties' Contentions

Villanueva argues that he sufficiently alleged a cause of action for breach of fiduciary duty by Fidelity because he alleged that Fidelity violated the Insurance Code by charging unfiled rates and he paid the unlawful charges. According to Villanueva, Fidelity had a fiduciary duty not to charge unfiled rates in violation of the Insurance Code, and this duty was "incorporated as a matter of law into the escrow instructions."

Fidelity responds that the trial court properly granted judgment on the pleadings because the cause of action for breach of fiduciary duty "was not premised on any common law fiduciary duty that Fidelity owed to Plaintiffs. Rather, it was premised solely on Fidelity's alleged violation of the Insurance Code, which provides no private right of action."

### 3. Analysis

The California Supreme Court has stated the applicable standard of review: "A motion for judgment on the pleadings presents the question of whether 'the plaintiff's complaint state[s] facts sufficient to constitute a cause of action against the defendant.' [Citation.] The trial court generally considers only the allegations of the complaint, but may also consider matters that are subject to judicial notice. [Citation.] ' "Moreover, the

19

allegations must be liberally construed with a view to attaining substantial justice among the parties." [Citation.] "Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory." ' [Citation.]" (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 272 (*Jacks*).)

" 'An appellate court independently reviews a trial court's order on such a motion.' [Citation.]" (*Jacks*, *supra*, 3 Cal.5th at p. 272.) Accordingly, we will affirm an order granting a motion for judgment on the pleadings that is correct on any legal basis, regardless of the trial court's rationale. (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1220.)

" ' "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." ' [Citation.] The breach of fiduciary duty can be based upon either negligence or fraud, depending on the circumstances. [Citations.]" (*Tribeca Companies, LLC v. First American Title Insurance Co.* (2015) 239 Cal.App.4th 1088, 1114.)

Our Supreme Court addressed an escrow holder's fiduciary duty in *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit*).) " 'An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition.' [Citations.] An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.] The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. [Citations.] . . . [¶] In delimiting the scope of an escrow holder's fiduciary duties, then, we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]' [Citation.] . . . Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions. [Citations.]" (*Ibid.*)

In the present case, Villanueva alleges that Fidelity breached its fiduciary duty by charging unfiled rates for certain escrow services provided by Fidelity during the Villanuevas' refinance transaction. Villanueva did not allege that Fidelity failed to comply with the escrow instructions, nor did Villanueva allege that Fidelity committed fraud. Accordingly, we determine that Villanueva has not alleged facts sufficient for a cause of action for breach of fiduciary duty against Fidelity. (See *Summit*, *supra*, 27 Cal.4th at p. 711; *Jacks*, *supra*, 3 Cal.5th at p. 272.)

Villanueva argues that the decision in *Castillo v. Express Escrow Co*. (2007) 146 Cal.App.4th 1301 supports his contention that he alleged facts sufficient for a cause of action for breach of fiduciary duty because the decision in *Castillo* stands for the proposition that "all laws in existence when the agreement was made become part of the contract," and thus part of the escrow instructions. (*Id*. at p. 1308.) However, the decision in *Castillo* does not aid Villanueva because that decision did not address a cause of action for breach of fiduciary duty.

For these reasons, we conclude that the trial court did not err in granting Fidelity's motion for judgment on the pleadings on the cause of action for breach of fiduciary duty. Having also concluded that Villanueva lacks standing to bring an action under the UCL, we will therefore reverse the judgment and direct the trial court to vacate the order granting injunctive relief and to enter a judgment of dismissal.

## III.  DISCUSSION:  Case No. H042504

In case No. H042504 both parties appeal from the May 14, 2015 postjudgment order on attorney's fees and costs.

### A.  *Background*

The parties filed three postjudgment motions:  (1) Villanueva's motion for an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5; (2) Fidelity's motion to strike Villanueva's memorandum of costs or to tax costs; and (3) Villanueva's motion to tax costs claimed by Fidelity.

21

As stated in the May 14, 2015 order, the trial court denied Villanueva's motion for an award of attorney's fees because the court found that Villanueva "would have had an incentive to litigate even absent the fee-shifting mechanism of Code of Civil Procedure section 1021.5." Having determined that Villanueva was the prevailing party for purposes of costs, the trial court denied Fidelity's motion to tax costs and granted Villanueva's motion to tax costs claimed by Fidelity.

Villanueva contends that the trial court erred in denying his motion for attorney's fees on the ground that his UCL action did not satisfy the criteria for an award of attorney's fees under Code of Civil Procedure section 1021.5.

Fidelity argues the trial court erred when it awarded costs to plaintiffs, denied Fidelity's motion to strike or tax plaintiffs' costs, and granted plaintiffs' motion to tax Fidelity's costs in their entirety.

**B.     Analysis**

**1.     Attorney's Fees**

Under Code of Civil Procedure section 1021.5, a court may "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (Code Civ. Proc., § 1021.5.) "However, a party seeking an award of Code of Civil Procedure, section 1021.5 attorney fees must first be determined to be 'a successful party.' [Citation.]" (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 521.) "The terms 'prevailing party' and 'successful party' are synonymous. [Citation.]" (*Ibid.*)

On appeal, we review the trial court's order denying attorney's fees, not its reasoning, and we will affirm the order " 'if it is correct on any theory apparent from the

22

record.' " (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 625.) Since we have reversed the judgment in case No. H041870, Villanueva cannot be considered the prevailing party for purposes of an award of attorney's fees under Code of Civil Procedure section 1021.5. Consequently, we will affirm the trial court's order denying Villanueva's motion for attorney's fees without addressing the party's arguments on the merits as set forth in their briefing on appeal.

### 2. Costs

As to the trial court's orders regarding costs, it is well established that where, as here, a judgment is reversed on appeal, the award of costs is vacated as incident to the judgment. (*Evans v. Southern Pacific Transportation Co*. (1989) 213 Cal.App.3d 1378, 1388.) Since we have concluded that the judgment in favor of Villanueva must be reversed and the action dismissed, the order awarding costs to Villanueva must be vacated. (See *ibid*.) Fidelity is therefore "a defendant in whose favor a dismissal is entered" under Code of Civil Procedure section 1032 and is therefore a prevailing party, "entitled as a matter of right to recover costs" in this action. (Code Civ. Proc., § 1032, subds. (a)(4), (b).)

However, because the record on appeal is incomplete regarding the litigation of the parties' motions to tax costs, we will remand this matter to the trial court to rule in the first instance on Villanueva's motion to tax Fidelity's costs and to determine the amount of the costs award, if any.

## IV. DISPOSITION

In case No. H041870 the judgment is reversed. The cause is remanded to the superior court with directions to (1) vacate the judgment and enter a new judgment dismissing the action; and (2) vacate the order granting injunctive relief.

In case No. H042504 the postjudgment order denying Villanueva's motion for attorney's fees is affirmed. The postjudgment order denying Fidelity's motion to tax Villanueva's costs, awarding Villanueva his costs of suit, and granting Villanueva's

motion to tax Fidelity's costs is vacated.  The trial court is directed, upon appropriate motion, to conduct a hearing on Villanueva's motion to tax Fidelity's costs.

The parties shall bear their own appellate costs.

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

GROVER, J.



_____

DANNER, J.




*Villanueva et al. v. Fidelity National Title Company*
H041870, H042504